OPINION OF THE COURT
Harold Tompkins, J.
This action raises the issue of Federal preemption of airline advertising, on price and its relation to New York State’s right *? to protect its consumers from purportedly deceptive advertising. These issues arise from the Attorney-General’s motion to enjoin Trans World Airlines (TWA) from placing advertisements in that it does not state the full round-trip price of an airline flight. The Attorney-General also seeks to restrain TWA from including additional surcharges, such as for fuel, departure taxes, Federal inspections, security surcharges since in the advertisements these additional surcharges are noted with an asterisk and mentioned in small type at the bottom of the advertisement.[2]
TWA seeks to stay the proceeding before this court on the basis that there is a pending action brought by it in the United States Court for the Western District of Texas in which the Attorney-General of New York has been joined as a party. It states that the issues before the Federal court in Texas concern the preemption by the Federal Aviation Act, and the Airline Deregulation Act of 1978 (49 USC § 1301 et seq.) of Texas’ attempt to prevent the same price-related advertising that New York seeks to foreclose in this action.

The Advertisements

On September 14, 1988, TWA ran a full-page advertisement in the New York Times and other New York newspapers announcing a package trip to London, England, that included airfare, hotel, and a rental car. The advertisement’s headline read: "London Roundtrip + Hotel + Car = $298.” The dollar figure appeared in bold-face type approximately five inches high. According to the State, the headline implied that a consumer could travel to London, stay in a hotel, and rent a car for $298.
The small-print text below the headline and a footnote in minuscule type at the bottom of the page indicated that the $298 figure applied to a hotel in the English countryside, not London, and was available only to travelers who first paid for three consecutive nights in a London hotel. Although the footnote indicated that the package required a seven-day minimum stay, the text stated that the free rental car applied *699 for only three days, after which the traveler would have to pay "only $17 a day”. The footnote stated that the fare did not include United States departure tax, security surcharge, and custom fees totaling $23, and that the car rental charge omitted fuel surcharges, taxes and optional items such as an automatic transmission. According to the State, these additional charges increased the package’s cost to a minimum of $792 ($321 [airfare] + $450 [hotel] + $21 [car]) and a maximum of $1,418 ($321 [airfare] + $867 [hotel] + $253 [automatic transmission car]).
In March 1989, TWA ran another advertisement in the New York Times and other New York newspapers announcing packages to London and other overseas cities. The advertisement contained a large-print headline saying: "Let our low fare bring back the good old days”, small-print text and a smaller-print footnote setting forth the applicable restrictions and additional charges, and a boxed insert listing the one-way fares to various destinations, including London ($149), Rome ($299), Paris ($282), Milan ($264), Madrid ($246), Tel Aviv ($339), Lisbon ($246), Athens ($309), Frankfurt ($239), and Amsterdam ($239). The advertisement failed to indicate that— although the figures were for one-way fares — the prices applied only to round-trip purchases. The small-print set forth the various restrictions and additional charges described above.

Background

In December 1987 the National Association of Attorneys General (NAAG) adopted guidelines which characterized the airline industry’s practice of unbundling airfare surcharges as a deceptive practice. Unbundling consists of not including certain fees in the total advertised fare. TWA separately discloses these surcharges in a separate section in smaller print captioned "Fare Conditions”. Under 49 USC § 1381, the Department of Transportation has the authority to regulate unfair or deceptive practices in the airline industry. The Department of Transportation has considered the issue of unbundled fares. It has found that these advertisements are not unfair or deceptive so long as they are clear and the total amount paid by the customer can be easily determined adding the separate surcharges (14 CFR 399.84; order Nos. 85-12-68, *700 88-3-25, 88-8-2).[3] On November 14, 1988, the Attorney General of Texas sent letters to TWA and other airlines advising them that the practice of not including surcharges in the total advertised fare was a violation of the NAAG guidelines and that if the practice continued he would commence prosecution. On January 23, 1989 TWA and other airlines filed suit in the United States District Court for the Western District of Texas to enjoin the Texas Attorney General from enforcing the Texas Deceptive Practices Act based upon a claim that the Texas statute was preempted by the Federal law and regulations. On January 30, 1989, Judge Walter Smith granted the injunction and found the airlines had established a likelihood of Federal preemption (Trans World Airlines v Mattox, 712 F Supp 99 |WD Tex 1989]). On March 16, 1989, TWA and the other airlines sought to broaden this injunction to include the other 33 Attorneys General, including Attorney-General Abrams, who had adopted the NAAG guidelines on airline advertising and who appeared in a hearing. They also sought to amend their complaint to add the other 33 Attorneys General as defendants. This motion was granted on April 27, 1989 to the extent of preventing commencement of new actions. However, in the interim period on March 29, 1989 Attorney-General Abrams commenced this action in New York State Supreme Court to enjoin TWA pursuant to Executive Law § 63 (12) from unfair and deceptive practice in airfare advertisements. The action was removed to the United States District Court for the Southern District of New York on April 5, 1989. Judge Robert Sweet remanded the case to this court by order dated December 5, 1989 (People v Trans World Airlines, 728 F Supp 162). The Texas Federal court’s order operated prospectively and did not bar continuation of this action against TWA. The Fifth Circuit Court of Appeals has affirmed Judge Smith’s order that enjoined any new suits based upon the NAAG guidelines (Trans World Airlines v Mattox, 897 F2d 773). It held that TWA had established that 49 USC § 1305 explicitly preempted State deceptive advertising laws relating to airline fare advertisements.

Preemption

Federal law may preempt State law in three ways. Congress *701 may explicitly define the extent to which it intends to preempt State law (see, Shaw v Delta Air Lines, 463 US 85, 95 [1983]). Secondly, Congress may implicitly indicate an intention to preempt State law in a particular manner. This intention may be inferred by the pervasiveness of the Federal regulation in the area or if the Federal interest in the area is dominant. Finally, even in those areas where State law is not completely displaced, it is preempted to the extent it conflicts with Federal law by virtue of the Constitution’s Supremacy Clause (California Coastal Commn. v Granite Rock Co., 480 US 572, 581 [1987]).

Legislative History

Congress established the Civil Aeronautics Board (CAB) (originally the Civil Aeronautics Authority) in 1938 to regulate commercial aviation (Civil Aeronautics Act of 1938, ch 601, 52 US Stat 973 [1938]). This statute gave the agency the authority to determine if an airline engaged in unfair, noncompetitive or deceptive practices. The statute also provided it did not abolish any currently existing remedy.
In 1978, Congress enacted the Airline Deregulation Act of 1978 (Pub L No. 95-504, 92 US Stat 1705). Congress intended to allow competitive market forces to determine the price of airfare. It believed that reliance on market forces would encourage the efficient and economical development of the air transportation system (49 USC § 1302 [a]). The Act also included a provision that preempted State regulation "relating to rates, routes, or services” (49 USC § 1305 [a] [1]). The Civil Aeronautics Board was abolished and its remaining responsibility was transferred to the Department of Transportation (Civil Aeronautics Board Sunset Act of 1984, Pub L No. 98-443, 98 US Stat 1703). The House Committee On Public Works & Transportation’s report noted that exclusive Federal regulation would ensure uniformity (HR Rep No. 793, 98th Cong, 2d Sess 4, reprinted in 1984 US Code Cong & Admin News 2857, 2860).
The Transportation Department has exercised its authority in this area (14 CFR part 399). It has issued administrative orders permitting the separate listing of surcharges for government-imposed or government-approved fees, provided that the amount of each surcharge is included in the advertisement. This listing of surcharges may enumerate the surcharges separately or as a total. The agency also noted the *702 long-standing history of airlines advertising one-way fares based on round-trip purchases. The agency found no significant risk of deception so long as the advertisement accurately reflected the applicable surcharges and the total cost.
The Attorney-General contends that the general proscriptions against false advertising are not preempted. He asserts that the Federal regulation on price-related matters supplements the State’s power to prevent unfair and deceptive advertisements.
In the action brought by TWA, the Court of Appeals for the Fifth Circuit has affirmed the District Court’s injunction against the 34 Attorneys General. It held that Congress expressly preempted the area of airline fare advertising. It found that the history of Federal legislative law indicated an intent to give the CAB and later the Transportation Department regulatory authority over all price-related matters. The court also determined Congress sought to provide a uniform system of regulation by the Transportation Department and that this precluded State regulation (Trans World Airlines v Mattox, 897 F2d 773, supra; O’Carroll v American Airlines, 863 F2d 11 [5th Cir 1989], cert denied — US —, 109 S Ct 3158 [1989]). The benefits of deregulation would be diminished if State regulations could occupy the space the Congress intended to leave to the competitive marketplace.
Federal regulations have the same preemptive effect as Federal statutes (Fidelity Fed. Sav. & Loan Assn. v De La Cuesta, 458 US 141, 153 [1982]). The administrative agency’s regulation may preempt conflicting State law, so long as the agency’s determination does not exceed the statutory authority or is not arbitrary (supra, at 153-154). The exemptions issued by the Department of Transportation evince a clear determination to permit the separate listing that New York seeks to prohibit. The agency’s readoption of this policy by issuing order No. 89-4-25 after order Nos. 88-3-25 and 88-12-68 were invalidated on procedural grounds (State of Alaska v United States Dept. of Transp., 868 F2d 441 [DC Cir 1989]) establishes the Federal policy on this issue.
The history of the extensive Federal statutory and regulatory authority, together with the Transportation Department’s orders permitting the specific practices the Attorney-General seeks to restrain, persuade this court that Congress intended to preempt and exclude State law in the field.
The application for injunctive relief must be denied. The *703 Attorney-General cannot meet the standard since the area is preempted by Federal law and regulations and the Transportation Department’s orders permit the separate listing and one-way fare advertisements. The cross motion by TWA to stay this proceeding is granted and the Attorney-General’s application for injunctive relief is denied.

. The Attorney-General also seeks to restrain TWA’s advertising of car and hotel packages. The evidence before the court is that the "equation formula” of "London round trip and hotel and car = $298” used in the September 14, 1988 advertisement by TWA appeared only once and that TWA has entered into a consent order with the United States Department of Transportation on these issues.

. Order Nos. 88-3-25 and 88-8-2 were vacated on procedural grounds (State of Alaska v United States Dept. of Transp., 868 F2d 441 [DC Cir 1989]). The Department has reaffirmed its policy that separate listing of surcharges is permissible in order No. 89-4-25.