PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff,

v.

Robert ABRAMS, as Attorney General of the State of New York, Defendant.

No. 89 Civ. 2425 (RWS).

United States District Court, S.D. New York.

May 9, 1991.

Fulbright Jaworski & Reavis McGrath, New York City (Marc S. Dreier, Edward Dolido, of counsel) for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York, New York City, John W. Corwin, Asst. Atty. Gen., Bureau of Consumer Frauds and Protection (Ronna D. Brown, Andrea C. Levine, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Pan American World Airways, Inc. ("Pan Am") has moved to dismiss this action pursuant to Fed.R.Civ.P. 41(a)(2), or, in the alternative, for summary judgment on the counterclaims of defendant Robert Abrams, the New York State Attorney General ("the State"). The State has cross-moved to amend its answer to assert two new counterclaims. For the following reasons, the motion under Rule 41(a)(2) is granted, the State's cross-motion is denied, and the case is dismissed.

*Prior Proceedings*

As set forth in more detail below, Pan Am filed this case on April 11, 1989 seeking declaratory judgment that the State could not enforce its deceptive advertising statutes against Pan Am. The parties and the underlying facts were described more fully in the opinion of November 13, 1989 which dismissed several of Pan Am's claims and remanded two related cases to New York State court. *New York v. Trans World Airlines, Inc.,* 728 F.Supp. 162 (S.D.N.Y. 1989) ("the 1989 Opinion").

On October 22, 1990 Pan Am moved to withdraw its claims against the State and to dismiss the counterclaims for lack of subject matter jurisdiction. Alternatively, Pan Am sought summary judgment on the counterclaims on the grounds of collateral estoppel. The State cross-moved to amend its answer to add two counterclaims, both of which it asserted were originally pled as affirmative defenses to Pan Am's claims. Oral argument on the motions was heard on December 14, 1990. Due to ongoing developments in various related cases, the parties submitted further material and the matter was considered fully submitted as of February 7, 1991.

*The Facts*

As set forth in the 1989 Opinion, this action concerns the enforcement of New York statutes regulating deceptive advertising to control advertising by airlines. 728 F.Supp. at 165–66. This suit actually constitutes but a small piece of a wide-ranging battle, the result of a coordinated attack on airline advertising involving more than thirty states and their attorneys general. For the purposes of the present motion, it is necessary to review some of the complex chronology of this campaign.

In November, 1988, the Texas Attorney General's office wrote on behalf of California, Massachusetts, New York, Texas and Washington[1] to Trans World Airlines, Inc. ("TWA"), Continental Airlines, Inc. ("Continental") and British Airways PLC ("British Air"), suggesting that the states viewed the airlines' advertising practices, particularly the failure to include certain "surcharges" in advertised fares, as violative of their consumer protection laws, and threatening legal action if the practices continued.

In response to this letter, the three airlines sued the Texas Attorney General in January 1989, seeking a preliminary injunction preventing him from enforcing any state laws regulating their advertising practices. *Trans World Airlines, Inc. v. Mattox*, 712 F.Supp. 99 (W.D.Tex.1989).

The airlines claimed that such regulation was preempted by federal law, primarily § 411 of the Federal Aviation Act of 1958, Pub.L. No. 85–726, 72 Stat. 731 (the "FAA"), (codified as amended at 49 U.S.C. App. § 1381), with authorizes the Department of Transportation ("DOT") to regulate "unfair or deceptive practices or methods of competition in air transportation or the sale thereof."

New York and thirty-two other states joined Texas in opposing the preliminary injunction by filing a "Motion of Specially Appearing States," in which they claimed that they were appearing "specially," "without admitting or submitting to the subject matter jurisdiction of this Court and without admitting that this Court has personal jurisdiction over them...." *See* 1989 Opinion, 728 F.Supp. at 165.

By order of January 30, 1989, the Honorable Walter S. Smith, Jr. granted the airlines' request for a preliminary injunction, finding that "it is probable that: Plaintiffs will prevail in establishing their claims that any state regulation of advertising of the Plaintiffs' rates, routes, and services has been preempted by the Federal Government." 712 F.Supp. 99, 101 (W.D.Tex. 1989) ("*Mattox I*"). Shortly after granting the preliminary injunction, Judge Smith ruled that it applied only to the Texas Attorney General. *TWA v. Mattox*, No. A–89–CA–067 (W.D.Tex. Feb. 27, 1989) (order clarifying scope of preliminary injunction).

Thereafter, several of the states which had participated in the Texas action, including New York, began to pursue various airlines in their own state courts under their states' deceptive advertising laws. In response, the airlines moved in March 1989 to broaden the scope of the *Mattox I* preliminary injunction to bar litigation by any of the states which had participated in *Mattox*. At the same time, Pan Am and several other airlines sought to intervene in *Mattox*. While that motion was pending, the State commenced suit against TWA in New

---

1. The attorneys general of these states were acting in concert as part of a coordinated attempt by the National Association of Attorneys General ("NAAG") to enforce state false advertising regulations against the airlines.

York State court to enforce its false advertising and consumer fraud statutes. Pan Am then initiated this suit, seeking a declaratory judgment that the State's statutes were unconstitutional and were preempted by the FAA. The State responded by filing a second state enforcement action against Pan Am on April 20, 1989.

On April 26, 1989 Judge Smith granted the airlines' motions, allowing Pan Am and the others to intervene and broadening the scope of the preliminary injunction to prevent any of the states which had participated in *Mattox* from commencing suits against the plaintiffs. Judge Smith also directed the airlines to amend their complaint to join as defendants the attorneys general of the thirty-three states. *Mattox I*, 712 F.Supp. at 104–05. The New York enforcement action against TWA was one of four actions specifically excluded by Judge Smith from the broadened preliminary injunction. *Id.* at 106.

Subsequently, both Pan Am and TWA removed the New York State court actions to this Court, and the State moved to remand them and to dismiss Pan Am's federal action for failure to state a claim upon which relief could be granted and for lack of subject matter jurisdiction. TWA and Pan Am cross-moved for an order staying both of the removed state enforcement actions and this lawsuit pending the disposition of *Mattox,* or alternatively transferring all three cases to the Western District of Texas. In support of its motion to dismiss, the State argued that this Court should abstain from deciding Pan Am's federal claims until after the New York State court had a chance to resolve the issues following remand. *See* 1989 Opinion, 728 F.Supp. at 173.

On November 13, 1989, the State's motion to remand the two state court actions was granted, based upon a finding that the state laws in question were not preempted by any federal laws. 1989 Opinion, 728 F.Supp. at 184. While this conclusion was contrary to the *Mattox I* finding that the airlines were likely to prevail on the preemption question, because that case had involved only a preliminary injunction rather than a final adjudication there was no question of whether New York was collaterally estopped from raising the issue in this case. The 1989 Opinion also noted that *Mattox I* was at that time on appeal to the Fifth Circuit. *Id.* at 166. In addition to remanding the enforcement actions, the 1989 Opinion dismissed Pan Am's claim for preemption, but preserved its claims under the Commerce Clause and the First Amendment. *Id.* at 175–85.

On April 3, 1990, the Fifth Circuit affirmed *Mattox I. TWA v. Mattox,* 897 F.2d 773 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990) (*"Mattox II"*). The Court of Appeals discussed this Court's prior ruling along with rulings by the Southern District of California, *California v. TWA,* 720 F.Supp. 826 (S.D.Cal.1989), and the District of Kansas, *Kansas v. TWA,* 730 F.Supp. 366 (D.Kan. 1990), all of which had rejected the airlines' preemption arguments, but concluded that

> Unlike the district courts in *New York, California* and *Kansas,* we believe the history of federal legislation regulating airlines demonstrates the intent of Congress to expressly preempt state regulation of airline fare advertising, leaving no right of action that arises under state law only.

*Mattox II,* 897 F.2d at 782. The court apparently saw no issue of collateral estoppel in the prior district court rulings, although New York directly participated in the appeal in *Mattox II.*

In affirming the broadening of the preliminary injunction to all of the state attorneys general and the direction to join of them as defendants, the *Mattox II* court found that they had waived all objections to personal jurisdiction by appearing and seeking "an affirmative act by the court which would benefit their states." *Id.* at 786.

On May 1, 1990, in the New York enforcement action against TWA, the Honorable Harold Tompkins denied the State's motion for an injunction against TWA's advertising practices and granted TWA's motion to stay the state court proceedings

pending the outcome of the *Mattox* case. *People v. TWA,* 147 Misc.2d 697, 556 N.Y. S.2d 803 (Sup.Ct.N.Y.Co.1990). Justice Tompkins performed his own preemption analysis and concluded that the state statutes at issue were preempted. *Id.* The decision referred to this Court's 1989 Opinion but made no mention of its contrary determination on the preemption question. Instead, Justice Tompkins's analysis followed more closely that of the Fifth Circuit in *Mattox II. Id.*[2]

The *Mattox* litigation also proceeded. In June, Judge Smith entered final judgment permanently enjoining all thirty-four state attorneys general from instituting any action to enforce their state advertising laws against any of the plaintiff airlines. *TWA v. Mattox,* No. A–89–CA–067 (W.D.Tex. June 1, 1990) (*"Mattox III"*). As in his grant of the preliminary injunction, Judge Smith explicitly exempted from this order those cases which had been filed prior to his April 1989 order broadening the preliminary injunction. The cases thus exempted were those remanded to the California and Kansas state courts in *California v. TWA, supra,* 720 F.Supp. 826 and *Kansas v. TWA, supra,* 730 F.Supp. 366, and all three cases which were addressed in this Court's 1989 Opinion. *Mattox III,* judgment at 3–4. After the present motion had been argued, the final judgment in *Mattox* was affirmed in an unpublished opinion. *TWA v. Mattox,* 924 F.2d 1055 (5th Cir.1991).

Although the final judgment in *Mattox* by its terms had no direct effect on the ongoing state court actions in California and Kansas, both of those states' courts have accorded it preclusive effect under the principles of res judicata and collateral estoppel. *People v. TWA,* No. 609941, slip op. at 2 (Cal.Super.Ct. Aug. 24, 1990) ("The State of California is barred from relitigating the preemption issues in this case by the final judgment rendered in the Western District action because of the doctrines of res judicata and collateral estoppel"); *State v. TWA,* No. 89–CV–567, slip op. at 5 (Kan. Dist.Ct. Aug. 11, 1990) ("plaintiff's claims

in the instant action are barred by the doctrine of collateral estoppel or res judicata"). The only two remaining opportunities for the states to litigate the preemption issue—other than on appeal—are in this case and in the State's state enforcement action against Pan Am.

*Discussion*

In light of the procedural developments described above, the parties have reversed their original jurisdictional positions. Pan Am has concluded that its initial pursuit of this action was unnecessary and that the dispute should be resolved by the state court, and the State just as naturally has abandoned its earlier position and acquired confidence in this Court's exercise of its jurisdiction.

The present motions raise the following questions:

(1) Is it possible to dismiss Pan Am's claims but retain jurisdiction over the State's counterclaims?

(2) Should the State be allowed to amend its answer to add counterclaims which duplicate claims raised in the state enforcement action against Pan Am?

(3) If it is possible to retain jurisdiction over the counterclaims, is it also appropriate?

*1. Dismissal of Pan Am's Claims Is Warranted Under Rule 41(a).*

The first part of Pan Am's motion seeks a dismissal of its claims under Fed.R.Civ.P. 41(a). While the State consents to the discontinuance of Pan Am's claims, it strenuously objects to any dismissal of its counterclaims. Therefore, the motion is governed by Rule 41(a)(2):

*41. Dismissal of Actions.*

(a) Voluntary Dismissal: Effect Thereof.

*(2) By Order of the Court.* ... If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dis-

---

**2.** According to New York, an appeal of Justice Tompkins' May 1 decision is currently pending

in the Appellate Division.

miss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.

■ The issue which must be determined is whether the State's counterclaims can be adjudicated in this Court even after Pan Am has withdrawn its claims. Prior to the proposed amendment, the only counterclaims were those for breach of contract based on two alleged agreements by Pan Am to discontinue its deceptive advertising in the State. Both parties agree that there is no independent basis for federal jurisdiction over these counterclaims or over any of the new counterclaims which the State seeks to add by the amendment. Consequently, the relevant inquiry is whether this Court may exercise ancillary jurisdiction over the counterclaims.

According to the State, ancillary jurisdiction exists because the counterclaims are compulsory counterclaims within the meaning of Rule 13(a), Fed.R.Civ.P. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Moore v. New York Cotton Exchange*, 270 U.S. 593, 608, 46 S.Ct. 367, 370, 70 L.Ed. 750 (1926); *Federman v. Empire Fire and Marine Ins. Co.*, 597 F.2d 798 (2d Cir.1979).

The nexus between Pan Am's claims, seeking a declaratory judgment that the State cannot enforce its deceptive advertising laws against the airline, and the counterclaims, that Pan Am breached independent agreements to cease the advertising which the state found objectionable, appears to satisfy Rule 13(a)'s requirement that the counterclaims "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim...."

Nonetheless, the State's assertion that its counterclaims are compulsory would be easier to accept if the state had not filed its own action against Pan Am in state court between the time Pan Am had initiated this suit and the date on which it first asserted the counterclaims in its answer. As the State itself states, "[t]he purpose of F.R. C.P. 13(a) is to prevent a multiplicity of

actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Defendant's November 9, 1990 Memorandum of Law in Opposition to Plaintiff' Motion for Summary Judgment and in Support of its Motion to Amend at 4. The State was one of the primary actors in instigating the *Mattox* litigation, and it was only after the initial setback in that case that it elected to file its own claim against TWA, already one of the *Mattox* defendants, a decision which has led to the present situation.

Finally, the State has not explained the distinction between its enforcement action against Pan Am, which it clearly believed— at least at one time—did not involve claims which were compulsory counterclaims in this action, and the counterclaims which it actually chose to raise here. It is difficult to view the State's breach of contract claims as more closely related to Pan Am's declaratory judgment claims than to its own attempts to enforce the very statutes which gave rise to the contract claims.

However, as the counterclaims have proceeded this far in the present case, and as it appears that there is at least some overlap of underlying issues between the claims and the counterclaims, the logical conclusion is that the counterclaims were compulsory under Rule 13(a). Therefore, ancillary jurisdiction over the counterclaims exists even if Pan Am's claims are dismissed, and thus under Rule 41(a)(2) dismissal of those claims is appropriate.

### 2. The State's Proposed Amendment Is Futile Due to Collateral Estoppel.

The counterclaims which the State seeks to add by amendment assert that Pan Am's advertising practices are violative of state law. Because the doctrine of collateral estoppel prevents the State from arguing that its laws are not preempted by federal regulation, the amendment must be denied as futile.

#### a. The standard for a motion to amend to add counterclaims.

Federal Rules of Civil Procedure 13(f) and 15(a) govern the amendment of plead-

ings to add previously omitted counter-claims. Rule 13(f) provides

> When a pleader fails to set up a counter-claim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

Under Rule·15(a), leave to amend a pleading "shall be freely granted when justice so requires." The State clearly did not omit to plead the new counterclaims in its original answer as a result of oversight, inadvertence, or excusable neglect. In fact it affirmatively sought to remove those claims from the jurisdiction of this court. Thus the relevant inquiry under both 13(f) and 15(a) is whether "justice requires" leave to amend the answer.

The Second Circuit, in construing Rule 15(a)'s test of "when justice so requires," has commented

> Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.

*State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Because the proposed amendment would be futile it will be denied.

### b. Futility of the amendment.

■ In the 1989 Opinion, Pan Am's claim for declaratory judgment that the State's deceptive advertising laws were preempted by federal regulations was dismissed based on the determination that there was no preemption. 728 F.Supp. at 175–81. The State urges this Court to adhere to that earlier ruling, notwithstanding the intervening contrary rulings in *Mattox* and the New York State court action against TWA, under the doctrine of the law of the case.

However, the law of the case is generally considered a discretionary doctrine, while the doctrine of collateral estoppel is not. *Compare Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.) (law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power") *with Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) ("[u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits"); *see also Loumar, Inc. v. Smith*, 698 F.2d 759, 762 n. 3 (5th Cir.1983) (res judicata "is categoric and requires that respect be accorded the prior judgment, while the law of the case doctrine is merely a *'rule of practice'* ") (quoting *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950)) (footnote omitted; emphasis added in *Loumar*). Moreover, both law of the case and collateral estoppel follow the rule that a more recent decision generally prevails over an inconsistent earlier one.

■ Of course, before applying collateral estoppel to the present case, it must be established that the requirements of the doctrine have been met. As described in *Montana v. United States, supra,* collateral estoppel may properly be invoked "once an issue is actually and necessarily determined by a court of competent jurisdiction" in order "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate...." 440 U.S. at 153, 99 S.Ct. at 973.

According to the State, the *Mattox* judgment should not be given collateral estoppel effect here because the State did not have a full and fair opportunity to participate in that case prior to the issuance of the original preliminary injunction. However, this contention overlooks the fact that the preliminary injunction involved only the determination that the airlines were likely to prevail on their preemption argument, and the State was joined as a party—and in fact participated in the case—well before both the Fifth Circuit's decision affirming the preliminary injunction and the final judgment and affirmance. Furthermore, it is clear that the preemption issue was central to *Mattox*, and that it was resolved

against the State. Therefore, collateral estoppel is appropriate.

■ Moreover, even if *Mattox* did not collaterally estop the State, its own enforcement action would. While the State describes Justice Tompkins' decision as "follow[ing] the result reached by the Fifth Circuit," Def.Mem. at 6–7, a reading of that opinion indicates that Justice Tompkins was aware of this Court's 1989 Opinion, and that after performing his own analysis of the preemption issue he chose to agree with the Fifth Circuit's decision. Nothing indicates that the State was in any way prevented from litigating the issue fairly and fully. Therefore, the state court decision must also be accorded preclusive effect.[3]

■ Thus, notwithstanding the prior contrary ruling in this case, the preclusive effects of the intervening decisions on the preemption issue compel the conclusion that the State's proposed amendments would be futile, and that justice does not require granting the State leave to amend its answer to add the new counterclaims.

*3. The Court Will Decline to Exercise Its Ancillary Jurisdiction Over the Counterclaims.*

Having concluded that it is possible to exercise ancillary jurisdiction over the counterclaims, and that dismissal of Pan Am's claims is therefore warranted under Rule 41(a)(2), it is now necessary to determine whether the exercise of ancillary jurisdiction is appropriate: 41(a)(2) requires only that the counterclaims *"can* remain pending," not that they *must* do so.

■ As with pendent jurisdiction, *e.g., United States v. A & N Cleaners & Launderers, Inc.,* 747 F.Supp. 1014, 1016–17 (S.D.N.Y.1990), there is a discretionary component to the exercise of ancillary jurisdiction. *Dahlberg v. Becker,* 581 F.Supp.

855, 865 (N.D.N.Y.1984). The factors generally considered in determining whether to exercise that discretion are judicial economy, convenience of the parties and fundamental fairness. *Id.* Under the circumstances of this case, consideration of these factors requires that the Court decline to exercise ancillary jurisdiction over the State's counterclaims.

In light of the foregoing denial of the State's motion to amend its answer, the only counterclaims are those for breach of contract, alleging that Pan Am has violated the terms of two Assurances of Discontinuance which it entered in September 1987 and January 1988. Clearly these counterclaims involve New York state law and are related to claims which are presently before at least one tribunal of that state.[4] As there is no reason for the state court to defer to this Court's resolution of any of the issues involved here, retaining jurisdiction over the counterclaims will actually lead to the inefficiency of two different courts dealing with nearly identical claims and issues. Consolidation of all of the State's claims in a single forum—the state court—would obviously be more convenient for both sides.

In summary, the concerns of judicial economy, convenience of the parties and fundamental fairness all support the conclusion that the exercise of ancillary jurisdiction over the State's counterclaims is not appropriate in this case.

*Conclusion*

For all of the foregoing reasons, Pan Am's motion under F.R.C.P. 41(a)(2) is granted, the State's cross-motion to amend its answer is denied as untimely, and the case is dismissed.

It is so ordered.

---

**3.** Any contrary conclusion would leave this Court in the rather awkward position of attempting to enforce the state statutes, and thus to interpret and apply state substantive law, after the state court has refused to enforce those laws because they are preempted.

**4.** Among other things, the State is entitled, in its state enforcement action, to use Pan Am's alleged violation of the Assurances as prima facie proof of the violation of the state laws involved in the Assurances. *See* N.Y.Exec.Law § 63(15).