THE PEOPLE OF THE STATE OF NEW YORK, by ROBERT ABRAMS, Attorney-General of the State of New York, Appellant, v TRANS WORLD AIRLINES, INC., Respondent.

First Department, October 1, 1991

### APPEARANCES OF COUNSEL

*Ronna D. Brown* of counsel *(John W. Corwin, Andrea C. Levine* and *Harvey M. Berman* with her on the brief; *Robert Abrams, Attorney-General),* for appellant.

*Margaret M. Harding* of counsel *(Marc S. Dreier, Andrew C. Freedman* and *Edward Dolido* with her on the brief; *Fulbright Jaworski & Reavis McGrath,* attorneys), for respondent.

*Cornish F. Hithchcock* of counsel *(David C. Vladeck* and *Alan B. Morris* with him on the brief; *Public Citizen Litigation Group,* attorneys), for Public Citizen and Aviation Consumer Action Project, *amici curiae.*

### OPINION OF THE COURT

Per Curiam.

The instant litigation is part of a national effort by members of the National Association of Attorneys General (NAAG), of which petitioner Abrams is a member, to combat perceived irregularities in airline advertising and a counter-effort on the part of various airlines to establish that the States are preempted by Federal law from regulating the manner in which they so advertise. In addition to this suit, other actions taken in the campaign by the Attorneys General included the institution of comparable suits in the State courts of Kansas and California by the Attorneys General of those States and a similar action by petitioner against Pan American Airways (Pan Am) in New York State court. In response to this plan of action by the Attorneys General, a

number of airlines, including respondent, brought an action, entitled *Trans World Airlines v Mattox,* against the Attorney General of Texas in the United States District Court for the Western District of Texas in order to enjoin the bringing of a threatened action in that State directed to airline advertising, and Pan Am instituted an action against petitioner in the United States District Court for the Southern District of New York seeking a declaratory judgment that, *inter alia,* the enforcement of the NAAG guidelines by means of New York's false advertising statutes against airlines was preempted by Federal law. All of these cases involved the airlines' practice of "unbundling", i.e., listing certain necessary surcharges, such as departure taxes, separately from, and in smaller type than, the advertised airfare.

In the instant action, petitioner's allegations charged respondent with improper practices beyond unbundling and sought to enjoin respondent from the various advertising techniques used by respondent in a series of advertisements run in New York newspapers. The first of these advertised a travel package described in a banner headline as "LONDON ROUNDTRIP + HOTEL + RENTAL CAR = $298." Elsewhere in the advertisement, in much smaller print, the reader was informed that the hotel accommodations included in the package were not in London but elsewhere in the English countryside, that in order to be eligible to receive the accommodations which were included in the package the consumer was required to first pay for three consecutive nights in a London hotel, and that the car rental included in the package was for only three days of the seven-day minimum stay. The small print also revealed that certain surcharges, i.e., United States departure tax, a security surcharge, and custom fees, totaling $23, had been unbundled from the advertised airfare, and that other surcharges had been unbundled from the car rental. A subsequent advertisement ran a headline advertising "NEW YORK TO LONDON" for a fare of $149. Closer examination of small print revealed that this fare represented one half of a roundtrip fare, from which surcharges had been unbundled and to which various restrictions applied. It is conceded that TWA did not offer a one-way fare for this amount. A third advertisement contained similar techniques.

Shortly after the appearance of these advertisements, petitioner brought this special proceeding, pursuant to Executive Law § 63 (12), alleging that they constituted false advertising under General Business Law § 350 and seeking, *inter alia,* to

permanently enjoin TWA from advertising in the manner complained of. TWA sought removal of the action to the United States District Court for the Southern District of New York on the ground, *inter alia,* that the State law sought to be enforced was preempted by Federal law. The case was consolidated with the action brought in the Southern District by Pan Am seeking a declaratory judgment. It was also consolidated with the action brought against Pan Am by petitioner in State court, which had also been removed to Federal court. Petitioner then moved in the Southern District to remand, and respondent, in turn, moved to either stay the lawsuit pending the outcome of the suit which had been brought by it and other airlines in the United States District Court for the Western District of Texas, or, in the alternative, to transfer the instant litigation to Texas. On December 5, 1989, petitioner's motion was granted and this action was remanded to State court on the ground that there was no preemption. *(People of State of N. Y. v Trans World Airlines,* 728 F Supp 162). In the parallel cases brought in Kansas and California State courts by the Attorneys General of those States, attempts at removal to the Federal courts were similarly unsuccessful and both cases were remanded to the State courts. *(See, State of Kan. ex rel. Stephan v Trans World Airlines,* 730 F Supp 366; *People of State of Cal. v Trans World Airlines,* 720 F Supp 826, *affd on reconsideration* 726 F Supp 785.)

In the interim, however, petitioner, along with 32 other State Attorneys General, had become directly involved in the litigation brought by respondent in the Western District of Texas. These Attorneys General, in an attempt to support the position of the Texas Attorney General, filed a "Motion of Specially Appearing States" in which they claimed to be appearing "specially", and "without admitting or submitting to the subject matter jurisdiction of this court and without admitting that this Court has personal jurisdiction over them". The Texas District Court ultimately rejected the proposition that these parties could appear on the merits without submitting to its jurisdiction and petitioner and the other Attorneys General, over their objections, were joined in the Texas litigation and, based on that court's finding that there was Federal preemption of State regulation of airline advertising, preliminarily enjoined them from bringing any new actions of this type *(Trans World Airlines v Mattox,* 712 F Supp 99). This action, together with the similar actions already pending in Kansas and California, and the actions pending

against Pan Am in New York State court and brought by Pan Am in the Southern District of New York, were exempted from that prospective preliminary injunction issued by the Texas District Court.

Thereafter, petitioner moved in the IAS court for a preliminary injunction in the instant case, alleging that advertisements of the type complained of in the petition had continued and that respondent had expanded the practices already described and had exacerbated the harm by falsely referring to a "security surcharge" as a government tax, although it was only an overhead expense. By reason of such practices, petitioner sought preliminary injunctive relief to enjoin TWA from (1) advertising the price of a roundtrip fare at less than the full roundtrip price if the purchase of a roundtrip ticket were a requirement for obtaining the advertised fare; (2) failing to include necessary surcharges in the advertised price; (3) failing to conspicuously disclose material restrictions; (4) referring to a fee as a government imposed tax unless it were one; (5) failing to include any necessary surcharges in the advertising of goods or services other than airfare; and (6) advertising any consumer goods or services as "free", if the consumer were required to pay any fees, taxes or any other payment in order to obtain the "free" goods or services. In response, TWA cross-moved for a stay of this action pending the resolution of the Texas litigation. Before a decision was rendered in the IAS court, the Fifth Circuit affirmed the preliminary injunction issued by the District Court for the Western District of Texas and also affirmed the joinder of petitioner and the other Attorneys General. *(Trans World Airlines v Mattox,* 897 F2d 773.) Based on that decision, and on its finding that the area of law sought to be enforced herein was preempted by Federal law, the IAS court denied petitioner's motion for a preliminary injunction and granted the stay of further proceedings sought by defendant, under CPLR 2201, based on the pendency of the Texas litigation which had not yet proceeded to a final judgment (147 Misc 2d 697).

Subsequent to the order of the IAS court, the United States Supreme Court denied a petition for certiorari with respect to the Fifth Circuit's affirmance of the preliminary injunction in *Mattox* (— US —, 112 L Ed 261, 111 S Ct 307, 308), and the case was remanded to the District Court, which thereafter issued a permanent injunction *(Trans World Airlines v Mattox,* WD Tex, June 1, 1990, No. A-89-CA-067). The permanent

injunction was also subsequently affirmed by the Fifth Circuit (924 F2d 1055), and a petition for certiorari from the latter affirmances is presently pending before the Supreme Court of the United States.

As to the other related litigations, both the California and Kansas State actions, which had been exempted together with the instant action from the Texas preliminary injunction, were ultimately dismissed by the respective State courts to which they had been remanded on the ground that each court had been collaterally estopped by the judgment in *Mattox* from finding that there was no Federal preemption. *(People v Trans World Airlines,* Cal Super Ct, San Diego County, Aug. 24, 1990, No. 609941; *State v Trans World Airlines,* Kan Dist Ct, Shawnee County, Aug. 11, 1990, No. 89-CV-567.) Pan Am withdrew its action for a declaratory judgment in the Southern District of New York and petitioner's counterclaims in that action were dismissed on the grounds, *inter alia,* that such counterclaims were futile since that court, too, would be collaterally estopped by the judgment in *Mattox (Pan Am. World Airways v Abrams,* 764 F Supp 864).

The issue before the IAS court in the instant case was whether petitioner was entitled to a preliminary injunction to enjoin respondent TWA from the type of advertising complained of. It is well settled that such an injunction may issue only where the party seeking it demonstrates that it is likely to succeed on the merits, that it will suffer irreparable injury in the absence of the preliminary injunction and that the balance of the equities is in its favor. *(Aetna Ins. Co. v Capasso,* 75 NY2d 860.) While the IAS court found that petitioner was unlikely to succeed on its claim because it was preempted by Federal law from enforcing this State's false advertising laws against respondent airline, the merits of that issue are no longer open to question in light of the course of the other litigation in which the parties have been involved. Under principles of collateral estoppel we must hold that petitioner is bound by the ruling that airline advertising is preempted by Federal law.

The purpose of the doctrine of collateral estoppel is to prevent the unfairness inherent in allowing a party to relitigate an issue which has previously been decided against it in a proceeding in which it has had a fair opportunity to fully litigate the point. *(Gilberg v Barbieri,* 53 NY2d 285.) A subsidiary purpose is to conserve the resources of courts and litigants. *(Supra.)* The requisites are that the party to be pre-

cluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination and the identical issue necessarily must have been decided in the prior action and be decisive of the present action. *(Kaufman v Lilly & Co.,* 65 NY2d 449.)

Pivotal to a determination as to whether or not petitioner is collaterally estopped from relitigating the finding by the *Mattox* courts, that the types of regulations sought to be enforced in this action are preempted by Federal law, is the subsidiary issue of whether petitioner had a full and fair opportunity to litigate the question of preemption before the Federal courts in *Mattox*. Because petitioner has participated in litigating the same issues on so many different fronts, he is in the unusual position of, in effect, being doubly collaterally estopped—that is, not only on the issue of preemption but also, significantly, on the issue of whether he had a full and fair opportunity to litigate that issue before the *Mattox* courts.

There is no question that petitioner, as a party in the parallel case of *Pan Am. World Airlines v Abrams* (764 F Supp 864, *supra)* in the United States District Court for the Southern District of New York, had an opportunity to fully litigate the issue of the preclusive effect of his role in the Texas litigation. Petitioner, as the defendant in the *Pan Am.* case, moved to amend his answer to add counterclaims comparable to the claims brought in this action. A basis of Judge Sweet's denial of such motion in the District Court, and his dismissal of that action, was the preclusive effect of the judgment in *Mattox*. Judge Sweet's decision makes clear that he "squarely addressed and specifically decided the issue" *(O'Connor v G & R Packing Co.,* 53 NY2d 278, 280) of whether petitioner had a full and fair opportunity to litigate the preemption issue in the Texas Federal courts and it was expressly found that he had had such an opportunity *(Pan Am. World Airways v Abrams,* 764 F Supp 864, *supra).* Under principles of collateral estoppel *(see, Ross v Medical Liab. Mut. Ins. Co.,* 75 NY2d 825; *see also, Malloy v Trombley,* 50 NY2d 46), Judge Sweet's finding that petitioner had a full and fair opportunity to litigate the preemption issue in Texas is conclusive upon petitioner in the instant case and would preclude further consideration of that issue by this court. We note parenthetically, however, that we are in full agreement with Judge Sweet and were we to consider the issue on the merits would reach a similar conclusion. It was petitioner who initially sought to participate in the *Mattox* litigation, albeit on a

unilaterally defined limited basis, and when subsequent rulings and procedures in that case rendered him a party, there is no question but that he fully availed himself, together with the others with whom he was joined in interest, of the opportunity to vigorously litigate the preemption issue.

While there is no real dispute that the critical issue in this action is identical to that decided in *Mattox (supra)*, that question, too, was "squarely addressed and specifically decided" by Judge Sweet who found that the identical issue which is decisive in this action (and in the Southern District action) was necessarily decided in *Mattox,* i.e., that advertising falls within the proscription contained in section 105 of the Airline Deregulation Act (ADA) (49 USC Appendix § 1305 [a] [1]) which provides that "no State * * * shall enact or enforce any law * * * relating to rates, routes, or services of any air carrier" and that the States are therefore expressly preempted from enforcing State laws against false advertising of airlines' rates, routes or services.

■ There is, however, one issue that has not been expressly decided in any of the other litigations in which the parties have been involved, i.e., whether there is some ground upon which to distinguish the additional advertising practices complained of in the instant case, which are broader than those described in *Mattox,* that might render such practices subject to State regulation. We conclude, however, that there is no basis which would warrant a finding that regulation of such other related practices is not similarly preempted. Since the court in *Mattox* held that Congress intended to bestow a meaning upon the phrase "relating to", contained in section 105, that is sufficiently broad to include advertising, the only way that petitioner could prevail would be to demonstrate that a particular advertisement does not relate to the "rates, routes, or *services"* (emphasis added) of an air carrier. We find that it is unlikely that petitioner will be able to demonstrate that any of the advertisements described in this action were for anything other than TWA's rates, routes, or services and thereby outside of the purview of the holding in *Mattox.* Certainly, the complained of practice of halving a round trip fare to advertise a nonexistent one way fare constitutes the advertising of fares. Nor can it be gainsaid that TWA's advertising of integrated packages combining air travel and land amenities relates to both rates and services on an air carrier within the meaning of the statute. Indeed, the Ninth Circuit recently interpreted the term "services" in this context so

broadly that it was held to cover the exclusively intra-State delivery of packages by trucks owned by an air carrier because they were found to be an essential part of an all cargo air service and were therefore held to be exempt from economic regulation by the States *(Federal Express Corp. v California Public Utils. Commn., 936 F2d 1075).*

Since petitioner is bound, under principles of collateral estoppel, by the finding that the underlying action herein is preempted by Federal law, there is no likelihood of success on the merits of its claim and the IAS court's denial of the preliminary injunction must be affirmed. Since, however, a petition for certiorari directed to the final judgment in *Mattox* is currently *sub judice,* our affirmance is without prejudice to renewal in the event of an ultimate reversal of the Fifth Circuit's ruling.

In addition to denying the preliminary injunction, the IAS court issued a stay of this proceeding pending the outcome of the Texas litigation. While that action has been resolved at both the District and Circuit Court levels, we extend the stay pending final action by the United States Supreme Court. At that juncture, either party may make an appropriate application to the IAS court.

Accordingly, order, Supreme Court, New York County (Harold Tompkins, J.), entered May 4, 1990, insofar as it denied petitioner's motion for a preliminary injunction, is unanimously affirmed without prejudice to such further action as may be appropriate upon the final decision of the Supreme Court of the United States in the case of *Trans World Airlines v Mattox* (924 F2d 1055, *supra)* and the stay granted upon respondent's cross motion is hereby continued pending such final action by the Supreme Court of the United States in the above-noted case, without costs.

MURPHY, P. J., ROSS, ELLERIN and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered May 4, 1990, insofar as it denied petitioner's motion for a preliminary injunction, is unanimously affirmed without prejudice to such further action as may be appropriate upon the final decision of the Supreme Court of the United States in the case of *Trans World Airlines v Mattox* (924 F2d 1055), and the stay granted upon respondent's cross motion is hereby continued pending such final action by the Supreme Court of the United States in the above-noted case, without costs.