[686 NYS2d 35]

STRATEGIC RISK MANAGEMENT, INC., Individually and on Behalf of All Others Similarly Situated, Appellant, v FEDERAL EXPRESS CORPORATION, Respondent.

First Department, March 2, 1999

## APPEARANCES OF COUNSEL

*I. Stephen Rabin* of counsel (*Jacqueline Sailer* on the brief; *Rabin & Peckel, L. L. P.,* and *The Law Office of Leo W. Desmond,* attorneys), for appellant.

*Debra A. Shields* and *Eliot S. Jubelirer* of counsel (*Desmond T. Barry, Jr., Connie Lewis Lensing* and *Thomas F. Donaldson, Jr.,* on the brief; *Condon & Forsyth, L. L. P., Morgenstein &*

*Jubelirer* and *Federal Express Corporation,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

▮▮▮ Plaintiff contends that the defendant carrier improperly collected a tax, as part of its rate, even though the taxing statute had temporarily lapsed. To the extent it seeks relief as a taxpayer, plaintiff is in the wrong forum and the claims are preempted by Federal law. To the extent that plaintiff seeks State remedies for breach of contract, preemption notwithstanding, it has failed to establish a prima facie case.

The 6.25% Federal excise tax on air transportation (26 § USC 4271), regularly renewed since its 1941 enactment, has a long history. Generally, the tax is collected by airlines from passengers at the time that tickets are purchased. Defendant Federal Express Corporation (FedEx) is a Federally certified "cargo" (i.e., no passengers) carrier (*see, Federal Express Corp. v California Pub. Utils. Commn.*, 936 F2d 1075, *cert denied* 504 US 979). As an air carrier, it is subject to the excise tax imposed on goods being shipped by air. Unlike passenger airlines, for which the tax is separately broken out from the cost of the ticket and directly paid by the passenger, FedEx simply incorporates the tax and other undifferentiated overhead expenses within its rate, without separately charging the customer. Customers are advised that the rate they pay includes the excise tax. The FedEx Service Guide on which plaintiff relied specifically states: "[a]ll rates are on a per-package basis and include the excise tax required by the federal government on the transportation of property by air."

Although the excise tax was regularly renewed by Congress, as a consequence of the 1995-1996 budget impasse between the President and Congress the tax was not immediately renewed when it lapsed on December 31, 1995. It became effective again only on August 27, 1996, lapsing again on December 31, 1996, but thereafter was renewed again effective March 7, 1997. FedEx did not reduce its rates, though, to reflect its nonpayment of excise taxes during those time periods, which is the crux of the dispute. As a practical matter, then, FedEx was increasing its profit margin on each shipment when it charged an air rate for which an amount equivalent to an excise tax was not deducted from the rate.

Plaintiff, on its own behalf and purportedly on behalf of all FedEx customers during the subject time periods, contends

that this was an improper withholding of putative tax funds, entitling them to a refund. The complaint specifically alleged that the action was brought on behalf of all persons who "were charged a federal tax on all parcels they shipped" during the relevant time periods, that FedEx "nonetheless continued to charge this non-existent tax in its basic rate," and that defendant "has collected and continues to collect, from its customers, a fee purported to be a federal tax". The complaint asserts a violation of General Business Law § 349; breach of contract insofar as the rate was effectively increased without written notice in violation of the agreement; and unjust enrichment, insofar as defendant should have reduced the rate accordingly to avoid a windfall.

The IAS Court, characterizing this as a claim involving an alleged improper collection of the Federal excise tax, construed the action to be the equivalent of a tax refund action, and that it should be pursued against the Federal Government rather than the private party. The court also found a general consumer fraud statute such as General Business Law § 349, to the extent that it relates to rates, routes or services, to be preempted by the Airline Deregulation Act of 1978. The court dismissed the unjust enrichment claim on the basis that such equitable relief was barred in the event of an express written contract. Finally, on the basis of documentary evidence, the court dismissed the contract claim, finding that the operative phrasing did not purport to separately charge for the excise tax, that any tax was simply to be incorporated within the general charge, and that it was undisputed that the charge set forth in the Service Guide did not itself change.

■ In an action to require the refund of an improperly collected Federal tax, proper venue is in Federal District Court (28 § USC 1340), but only after a refund of the improperly collected tax or "any sum * * * wrongfully collected" has been requested from the Department of the Treasury (26 § USC 7422 [a]), and the action may be maintained only against the United States (26 § USC 7422 [f] [1]). Although persons collecting excessive taxes on behalf of the Federal Government are required to provide a refund upon request (26 § USC 6415 [c]), no private cause of action thereby arises (*DuPont Glore Forgan v American Tel. & Tel. Co.*, 428 F Supp 1297, *affd* 578 F2d 1367, *cert denied* 439 US 970) and, in this case, plaintiff specifically made no claim under section 6415 (c). Similarly, private actions commenced against air carriers to recover refunds of Federal excise taxes, allegedly unlawfully collected, have been

dismissed in numerous Federal circuits involving collection of the lapsed excise tax (*Brennan v Southwest Airlines Co.*, 134 F3d 1405; *Sigmon v Southwest Airlines Co.*, 110 F3d 1200, *cert denied*, 522 US 950; *Kaucky v Southwest Airlines Co.*, 109 F3d 349, *cert denied* 522 US 949; *Lehman v US AIR Group*, 930 F Supp 912). To the extent that plaintiff seeks a refund of a tax actually collected, similar reasoning governs here.

█ The argument may be made, alternatively, that the sums sought to be recovered did not actually constitute taxes, since the authorizing legislation was lacking and the sums were not deposited with the Treasury Department. Under such a theory, relief would not be limited to an action against the United States. However, the present action, nevertheless, remains a claim for a tax refund. As noted by the Ninth Circuit, "a suit to recover either a 'tax' or a 'sum' constitutes a suit for a tax refund * * * if someone wrongfully collects money as a tax, then a suit to recover the sum constitutes a tax refund suit, even if the sum did not literally constitute an 'internal revenue tax' " (*Brennan v Southwest Airlines Co.*, *supra*, at 1410). This has been described as a "bright line test" obviating any need to decide whether or not the airline had colorable authority to collect a tax (*Brennan v Southwest Airlines Co.*, *supra*, at 1410, n 7). The fact that, in *Brennan*, the airline had actually given some of the "tax" proceeds to IRS does not invalidate the basic rule as applied to the present case. In *Kaucky*, it was not even certain whether IRS had received the "tax" proceeds, and the result did not change. If, in fact, the sums were held out by FedEx, as collection agent for IRS, to constitute taxes—which is the gravamen of plaintiff's claim—then plaintiff's recourse still lies with the United States. The carrier, as an involuntary collection agent, is, rather, intentionally removed by Congress from exposure to taxpayer actions (*Brennan v Southwest Airlines Co.*, *supra*, at 1411). In such a case, as the Seventh Circuit has noted, IRS "has plenty of remedies against its collection agents who fail to remit taxes that they collect" (*Kaucky v Southwest Airlines Co.*, *supra*, at 352). As in the *Kaucky* case, the carrier here, rather than perpetrating a fraud—a claim specifically dropped by plaintiff—"was overconfident in believing that the tax would be extended and as a result failed to take the prudent measures * * * to refund the excise taxes * * *. Money collected in error by a lawful agent, public or private, of the Internal Revenue Service can be recovered only from the government" (*Kaucky v Southwest Airlines Co.*, *supra*,

at 353; *accord, Sigmon v Southwest Airlines Co., supra,* at 1203). The history of the tax, which had never lapsed since its 1941 enactment, likely led the carrier to conclude that its renewal was imminent, as in *Kaucky* (*supra,* at 352), so that no bad faith is apparent.

However, by making relief under section 7422 exclusive, Congress did not "leave consumers at the mercy of the airlines" (*Sigmon v Southwest Airlines Co., supra,* at 1206). In addition to seeking recourse against IRS, which then would be able to pursue remedies against its collection agent, a customer of an air carrier may also seek administrative relief with the Department of Transportation, empowered under the Airline Deregulation Act to investigate abusive practices by air carriers (*supra*).

Turning to the Airline Deregulation Act of 1978 (49 § USC 41713), to the extent that plaintiff, alternatively, challenges the sums collected as improperly and deceptively charged rates, Federal law (49 § USC 41713 [b] [1]) also preempts any State law "relat[ing] to" airline rates or services (*Morales v Trans World Airlines,* 504 US 374; *compare, Kay v USAir, Inc.,* 1994 US Dist LEXIS 10662 [ED Pa, July 28, 1994, VanArtsdalen, J.] [no preemption of safety claims unrelated to rates]; *compare also, Heller v Delta Air Lines,* 1993 US Dist LEXIS 11854 [SD NY, Aug. 24, 1993, Patterson, J.] [personal injury tort claims not preempted]), notwithstanding dicta in *Greene County Newspaper Co. v Federal Express Corp.* (No. CV96-0117), which, in any event, does not constrain our own decision making (*cf., People v Trans World Airlines,* 147 Misc 2d 697, *affd* 171 AD2d 76). Simply calling this a contract dispute does not gainsay that the dispute is over the rates charged by an air carrier during a specified time period (*see, Lehman v USAIR Group,* 930 F Supp 912, 915, *supra*). Accordingly, since it is a "commonplace of statutory construction that the specific governs the general" (*Morales v Trans World Airlines, supra,* at 384), General Business Law § 349, generally governing consumer fraud, is preempted by the Airline Deregulation Act under the circumstances of this case (*see, American Airlines v Wolens,* 513 US 219, 227-228 [under Illinois consumer fraud statute, economic tort challenge to airline's retroactive changes in its frequent flier program preempted by Airline Deregulation Act]; *accord, Stone v Continental Airlines,* 905 F Supp 823).

Since the State law claims, including common-law claims (*see, Travel All Over the World v Kingdom of Saudi Arabia,* 73

F3d 1423, 1435; *Statland v American Airlines*, 998 F2d 539, *cert denied* 510 US 1012) such as the contract claims advanced herein (*Kaucky v Southwest Airlines Co., supra*), are preempted by Federal law, we need not address the breach of contract and unjust enrichment claims. However, if we were to reach these claims, we would note, first, that plaintiff's theory, that the carrier engaged in a deceptive practice, more accurately sounds in fraud and misrepresentation (*see, Stone v Continental Airlines, supra* [tort claims disguised as contract claims are still preempted by Airline Deregulation Act]), and those claims were abandoned by plaintiff upon withdrawal of its first complaint.

The Airline Deregulation Act does not "shelter airlines from suits alleging no violation of State-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings" (*American Airlines v Wolens, supra*, at 228). The Supreme Court specifically has "left room for state actions 'too tenuous, remote, or peripheral * * * to have pre-emptive effect' " (*American Airlines v Wolens, supra*, at 224, quoting *Morales v Trans World Airlines, supra*, at 390). However, this "exception * * * is narrow and limited to the terms bargained for by the parties" (*Stone v Continental Airlines, supra*, at 826). In *Wolens*, plaintiffs advanced a breach of contract claim on the basis of the airline's retroactive modification of the terms of its frequent flyer program, effectively devaluing credits already earned by plaintiffs. The State court found plaintiffs' breach of contract claim to be too tangential to "rates routes, or services" to be pre-empted. In that case the modification of the program, for which purchase points could be exchanged for benefits at an agreed-upon rate, was essentially contractual in nature, and merely peripheral to the operation of an airline. The Supreme Court, adopting the State court's reasoning, found that "terms and conditions airlines offer and passengers accept are privately ordered obligations" not tantamount to a State's enforcement of any regulation or standard (*American Airlines v Wolens, supra,* at 228-229). Hence, "[a] remedy confined to a contract's terms simply holds parties to their agreements" (*American Airlines v Wolens, supra,* at 229). Even as alleged in the present case, we would note the absence of contractual language in the FedEx Service Guide evincing defendant's collection of specific sums for specific purposes or of an uncontemplated rate increase. Hence, we find that this is basically an action for refunds of putative tax payments, or a claim that the rate charged was deceptive, either theory being pre-empted by Federal law.

Accordingly, the order of Supreme Court, New York County (Harold Tompkins, J.), entered October 7, 1997, granting defendant's motion to dismiss the amended complaint, and the judgment entered thereon on October 28, 1997, should be affirmed, without costs.

SULLIVAN, J. P., LERNER and RUBIN, JJ., concur.

Order and judgment, Supreme Court, New York County, entered October 7, 1997 and October 28, 1997, respectively, affirmed, without costs.