**Robert G. KAUCKY, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**SOUTHWEST AIRLINES COMPANY, on behalf of itself and all others similarly situated, Defendant–Appellee.**

No. 96–2736.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1997.

Decided March 20, 1997.

Rehearing Denied April 15, 1997.

350

Larry D. Drury, Ben Barnow, Alan Marc Goldberg (argued), Barnow & Goldberg, Chicago, IL, for plaintiff–appellant.

Stephen Fedo (argued), Caroline P. Golden, Neal, Gerber & Eisenberg, Chicago, IL, for defendant–appellee.

Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Section 4261 of the Internal Revenue Code required airline passengers to pay a 10 percent excise tax on domestic air transportation commenced on or before December 31, 1995, and required the airlines to collect the tax from their customers, 26 U.S.C. § 4291, and remit the proceeds twice a month to the Internal Revenue Service. 26 C.F.R. § 40.6302(c)–1(b)(1)(i). Failure to collect and remit would have subjected the airlines to heavy penalties. 26 U.S.C. §§ 6672, 7202, 7501. In mid-December 1995, shortly after the President had vetoed a bill that would have extended the excise tax into 1996, Robert Kaucky bought two tickets from Southwest Airlines for travel in January 1996. The price that he paid included the 10 percent excise tax. Apparently Southwest remitted the amount it received from Kaucky for the tax to the IRS, although this is not absolutely certain. Kaucky was not subject to the tax, because his tickets were not for travel on or before December 31, 1995.

Kaucky brought suit in an Illinois state court, on behalf of himself and others who had bought tickets from Southwest in 1995 but not flown until 1996, against Southwest, seeking on grounds of conversion and breach of contract the recovery of the money that they had paid to the airline in respect of the nonexistent tax. He purported to sue Southwest not only in its own right but also as a representative of all other airlines that had engaged in the same practice. Defendant classes are sometimes permitted under both federal and state law (remember this case began in state court). Fed.R.Civ.P. 23(a); 735 ILCS 5/2–801; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1770 (2d ed. 1986). Given the relatively small number of airlines and (as we shall see) the disparity in their handling of the expired tax, it is doubtful that defendant class action treatment would be appropriate here. In any event no class was certified, and we shall therefore treat this as a suit against Southwest alone.

Southwest removed the case to federal district court on the ground that the plaintiff and his class were really seeking a refund of federal taxes. That would make this a suit arising under federal law (and hence removable under 28 U.S.C. § 1441(b)), specifically the Internal Revenue Code, which authorizes claims against the Internal Revenue Service, and, if the claims are denied, suits in federal court against the United States, for the recovery of any federal tax alleged to have been erroneously or illegally assessed or collected. 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a)(1). The district judge agreed that Kaucky's suit actually arose under federal law, and therefore denied the plaintiff's motion to remand the case to the state court. He then dismissed the suit because a suit for the refund of federal taxes may be brought only against the government, and not against a private person. *Columbia Marine Services, Inc. v. Reffet Ltd.*, 861 F.2d 18, 22 (2d Cir.1988); see also 26 U.S.C. § 7422(f)(1); *Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1278 (7th Cir.1984) (per curiam). Kaucky had not only not sued the government; he had not filed a claim for refund, which is a precondition to bringing such a suit. 26 U.S.C. § 7422(a); *Kuznitsky v. United*

*States,* 17 F.3d 1029, 1031 (7th Cir.1994). Of course if Kaucky were not the taxpayer—if Southwest were—he could not ask for a refund or bring a refund suit. But the airline passenger is the taxpayer, 26 U.S.C. § 4261(d), and is entitled to a refund or credit if he pays a tax that he does not owe, §§ 6401(c), 6402(a); the question is whether in suing Southwest, passenger-taxpayer Kaucky was seeking a tax refund.

■ If he was, the suit was properly removed to the district court despite the plaintiff's effort to base the suit on state law grounds and his failure to name the United States as the defendant. When federal law creates an exclusive remedy for some wrong, displacing any remedy that the states may have created for it, a suit to redress that wrong necessarily arises under federal law. There is no state law for it to arise under because the state law that the plaintiff thought he was suing to enforce has been pushed to one side, and replaced, by the federal law. *Freightliner Corp. v. Myrick,* 514 U.S. 280, ——, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995); *English v. General Electric Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *Graf v. Elgin, Joliet & Eastern Ry.,* 790 F.2d 1341, 1344–45 (7th Cir.1986). But if this is not a suit for a refund of taxes, then removal was improper even if Southwest has a defense based on federal law. *Caterpillar, Inc. v. Williams, supra,* 482 U.S. at 393, 107 S.Ct. at 2430; *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993).

■ In a literal sense this is not a suit for a refund of taxes, because the plaintiff and the members of his class never paid the air transportation excise tax. Money was collected from them to pay the tax if and when it was imposed on air travel taking place in 1996; but the tax was not imposed. Even if (as we assume) Southwest remitted the money it collected on account of the excise tax to the Internal Revenue Service, this did not automatically transform the money that it had collected into a "tax." Not all the money that the Internal Revenue Service receives is tax; it receives an annual appropriation from

Congress, as well; and no doubt from time to time some deluded taxpayer sends in money for the payment of a tax that, unbeknownst to him, has expired.

But we do not think the literal sense is the right sense. If it were, then anytime a taxpayer thought he could prove that his employer had erroneously withheld a portion of his salary for federal income tax he would have an action in state court against the employer. The state court might side with the taxpayer and order the employer to refund him the money. The federal government, not having been sued in the state court—indeed not having consented to be sued in state courts and so not having waived its sovereign immunity from suit in those courts—would not be bound by the judgment. It might therefore refuse to credit the employer with the amount of tax that the state court had ordered refunded to the employee—and then the employer would be caught in the middle. We do not think that such a result was intended or would be consistent with the system of federal tax collection that Congress has created. The specific illustration that we have given is nixed by 26 U.S.C. § 6401(c), which provides that an overpayment of tax does not lose its character as a tax for which the taxpayer is entitled to a credit or refund merely because he was not liable for any part of the tax that was assessed against him. But the principle is broader. When Congress makes a private firm the Internal Revenue Service's "collection agent" (we are not using "agent" in any technical sense), as it has done with the airline tax and other excise taxes, *DuPont Glore Forgan Inc. v. American Tel. & Tel. Co.,* 428 F.Supp. 1297, 1306 (S.D.N.Y.1977), as well as with payroll taxes, the firm corresponds to an employee of the Service, and a suit for a refund of the taxes that the firm collected—a suit necessarily based on a claim that the taxes were collected in violation of law—is as much a suit for the refund of federal taxes as if it had been brought against the Commissioner of Internal Revenue. (Not that such a suit would lie either, 26 U.S.C. § 7422(f)(1); the only proper defendant is the United States. Our point is only that such a suit would be understood as

one for the refund of taxes.) It makes no difference whether the firm is still holding the money it erroneously collected or has passed it on to the IRS. The principal is bound by the agent's act. The IRS has plenty of remedies against its collection agents who fail to remit taxes that they collect. See 26 U.S.C. § 6672(a).

The plaintiff likens this to a case in which a con man, posing as an IRS agent, collects and pockets "taxes" from gullible citizens. The con man's victims would have no action against the IRS, because he was not an agent of the IRS and presumably had not been clothed by it with apparent authority to collect taxes. The victims would have their usual state law remedies against the con man, because they would not be seeking a refund of federal taxes; the con man had not even colorable authority to collect taxes. That is not this case. Southwest, and any customer of Southwest who thought about these matters, had every reason to believe that a last-minute deal between the President and Congress would result in the extension of the tax beyond its December 31 expiration date. The sunset feature of the tax goes back to 1962. Pub.L. No. 87–508, § 5, 76 Stat. 114, 115 (1962). Between 1963 and 1990 Congress had four times extended the air transportation excise tax shortly before (once on the very day) it was due to expire. Pub.L. No. 88–52, § 3(a)(3), 77 Stat. 72 (1963); Pub.L. No. 88–348, § 2(a)(3), 78 Stat. 237 (1964); Pub.L. No. 89–44, § 303(a), 79 Stat. 136, 148 (1965); Pub.L. No. 100–223, § 402(a)(1), 101 Stat. 1486, 1532 (1987); Pub.L. No. 101–508, § 11213(d)(1), 104 Stat. 1388–435 (1990). As a result, the tax had, as 1995 was drawing to a close, never lapsed since its original imposition in the Revenue Act of 1941, ch. 412, § 554(b), 55 Stat. 687, 721 (1941), though it has now lapsed twice, for after being reimposed in August of 1996 it expired on December 31, 1996, without having been extended. Pub.L. No. 104–188, § 1609(b), 110 Stat. 1755 (1996). It was reimposed on February 28 of this year; and we note that the new statute avoids the refund problem that gave rise to Kaucky's suit by providing that it is applicable not only to transportation beginning during the period covered by the tax (which ends on September 30 of this year) but also to "amounts paid during such period for transportation beginning after such period." Pub.L. No. 105–2, § 2(b)(1), 111 Stat. 4, amending 26 U.S.C. § 4261(g). If the new statute had been in effect when Kaucky bought his ticket, he would have been liable for tax on it.

Had the tax not lapsed at the end of 1995—and, to repeat, it was a good bet, though as it turned out an erroneous one, that it would not lapse—Southwest would have been in trouble had it failed to collect the tax from customers buying tickets in 1995 for travel in 1996. The airline would have incurred expense and ill will in trying to collect the tax from its customers after they had bought their tickets, and might have faced penalties for failing to collect and remit the tax promptly. See 26 U.S.C. § 6656. In these circumstances, Southwest was exercising colorable authority to collect taxes, even though the collection turned out to be in error. It was almost as if the tax had had no expiration date but in 1997 had been repealed retroactively to 1996.

We are told that the larger airlines kept sufficiently complete records of tickets purchased in 1995 for use in 1996 to be able to refund the excise-tax portion of the ticket price to their customers when the tax was not extended. Assuming those airlines had, like Southwest, paid over this portion of the price to the IRS, they would be entitled to a tax credit for the amount of any refunds that they made to these customers. 26 U.S.C. § 6415(a). This was a fine way to proceed, a way more considerate of the affected customers than Southwest's method, which interpreted as favorably to the plaintiff as the record will allow involved collecting the tax and remitting it to the IRS and requiring the customer if he wanted a refund to file a claim with the IRS. But Southwest's way of proceeding was not so outlandish as to strip the airline of the protection that it enjoys from state-law suits challenging actions done by it in its capacity as a collector of federal excise taxes. The plaintiff was, it is true, denied an opportunity to conduct discovery aimed at finding out whether Southwest had been acting in bad faith. He would have liked to

show that Southwest pocketed the money it collected for the nonexistent tax rather than turning it over to the IRS. If that is what happened and people who paid the tax later obtained refunds from the IRS for the money retained by its dishonest collection agent, the IRS would have a number of remedies, criminal as well as civil, against Southwest. E.g., 26 U.S.C. §§ 6672(a), 7202; cf. 26 U.S.C. § 7501; *Begier v. IRS*, 496 U.S. 53, 60–62, 110 S.Ct. 2258, 2263–65, 110 L.Ed.2d 46 (1990). But many people would not bother to seek a refund from the IRS—they would not know that the tax had expired, or would not have retained the receipt for their ticket, or would not have enough at stake to warrant the bother of obtaining and filling out and submitting a claim for a refund—and the money those people erroneously paid on account of the nonexistent tax would lodge in Southwest's pocket.

■ The case just hypothesized in which the authorized agent turns dishonest is intermediate between the case of the imposter, which we said could be brought under state law, and the case of overpayment, which we said could not be. We may assume without having to decide that the intermediate case should be assimilated to the imposter case rather than to the overpayment case, so that the defrauded customers who had not gotten a refund from the IRS would have a claim against Southwest. This assumption does not carry the day for Kaucky. Although his brief speaks in general terms of Southwest's bad faith, the worst it claims is that Southwest was overconfident in believing that the tax would be extended and as a result failed to take the prudent measures that the larger airlines took to refund the excise taxes that they collected. This kind of error is no different from an error by an internal revenue agent, an employer, or another statutory collection agent in computing the tax that it is required by law to collect. Money collected in error by a lawful agent, public or private, of the Internal Revenue Service can be recovered only from the government, because a claim or suit to collect such money is a claim or suit for a tax refund.

■ We are mindful that section 6415(c) of the Internal Revenue Code provides that air-

lines required by section 4261 to collect the air transportation excise tax shall, upon proper application, refund any over-collection of the tax that they have made. This provision may be limited to errors in computation and designed only to spare the taxpayer and the Internal Revenue Service the burden of preparing and processing minuscule claims. *DuPont Glore Forgan Inc. v. American Tel. & Tel. Co.*, supra, 428 F.Supp. at 1304–05; *Lehman v. USAIR Group, Inc.*, 930 F.Supp. 912, 915 (S.D.N.Y.1996). Whatever the provision's precise scope, there is no express authorization for suits by taxpayers to enforce it; no indication that Congress would have wanted the courts to entertain such suits despite the absence of express authorization, cf. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979); *Meghrig v. KFC Western, Inc.*, —— U.S. ——, ——, 116 S.Ct. 1251, 1256, 134 L.Ed.2d 121 (1996); and a practical reason for the courts not to create such an action: it would throw a monkey wrench into machinery designed to confine suits for the refund of federal taxes to suits in the federal courts against the government in order to protect its private as well as public agents from being whipsawed. See *id.*; *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981). So this suit cannot be saved by recharacterizing it as a suit to enforce section 6415(c). It is a tax refund suit brought against the wrong party. It was properly removed and properly dismissed.

Affirmed.