Edward A. BRINSKELE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–911T.

United States Court of Federal Claims.

Oct. 12, 2006.

Woodford G. Rowland, San Rafael, CA, for plaintiff.

Benjamin C. King, Jr., U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Eileen J. O'Connor and Chief, Court of Federal Claims Section David Gustafson, for defendant.

## OPINION

FIRESTONE, Judge.

This case comes before the court on a motion by plaintiff Edward A. Brinskele ("Brinskele" or "plaintiff") for summary judgment pursuant to Rule 56 of the Rules of The United States Court of Federal Claims ("RCFC"). In 2001, following an Internal Revenue Service ("IRS") audit, Mr. Brinskele was assessed trust fund penalties totaling $950,378.42 under Internal Revenue Code ("IRC") § 6672. Mr. Brinskele paid $550.00 toward the trust fund penalty in 2002, and now seeks, in this court, a refund of those taxes and an abatement of all of the penalties and interest assessed.

At issue before this court is whether Mr. Brinskele can be held liable under IRC § 6672 for federal communications excise taxes that were collected by his company, MTC Telemanagement Corporation ("MTC"), from MTC's long distance telephone service clients, but which MTC then failed to pay over to the government. Mr. Brinskele claims that MTC cannot be held liable for the taxes or penalties because the long distance services sold by MTC were not subject to the federal communications excise tax. Mr. Brinskele argues that if MTC's

long distance services were not subject to the federal communications excise tax, then he cannot be held secondarily liable for the excise tax under the trust fund recovery penalty provisions of IRC § 6672. Accordingly, Mr. Brinskele seeks a refund of the $550.00 that he has already paid.[1]

The government contends that Mr. Brinskele is not entitled to summary judgment because regardless of whether MTC's long distance service was subject to the federal communications excise tax, Mr. Brinskele remains potentially liable under IRC § 6672. The government maintains that once MTC collected the federal communications excise tax from its customers, MTC owed that money to the government. According to the government, if the tax did not apply to MTC's long distance telephone services, MTC's customers had the responsibility to seek a refund from the IRS. The government argues that MTC, and by extension Mr. Brinskele, were not authorized to retain funds collected on behalf of the IRS. The government asserts, in the alternative, that summary judgment should be denied because MTC's long distance telephone services were subject to the federal communications excise tax under the definitions set forth in IRC §§ 4252(b)(1) and (2). Therefore, the government contends that MTC's clients did in fact owe the federal communications excise tax at issue at the time MTC collected the tax (1992, 1993, and the first three quarters of 1994).[2]

For the reasons set forth below, the court concludes that Mr. Brinskele may potentially be held liable under IRC § 6672 for the federal communications excise tax that MTC failed to turn over to the government regardless of whether MTC's long distance service was subject to IRC § 4251. Accordingly the plaintiff's motion for summary judgment is **DENIED.**

## BACKGROUND

The following facts are undisputed unless otherwise noted. In 1988, Mr. Brinskele founded MTC, which was originally known as Marin Telemanagement Corporation. During the relevant time period (1992, 1993, and the first three quarters of 1994), Mr. Brinskele served as Chairman, President, and Chief Executive Officer of MTC and owned approximately 64% of its outstanding stock. In June 1996, MTC and various affiliates merged with Netsource Communications, Inc., at which time Mr. Brinskele's operating role within the company was terminated. By March 1997, Mr. Brinskele had been forced out of the company and was no longer an employee or board member of MTC. In August 1997, creditors of Netsource Communications, Inc. filed a petition for involuntary bankruptcy of the company, the company was adjudicated as bankrupt, and was eventually liquidated. The company's assets, including its records, were taken over by the Bankruptcy Trustee, John Brownell.

Mr. Brinskele contends that when MTC was founded, its primary business focus was the management of its client's telecommunications services by auditing and consolidating its client's bills, and that initially MTC had no direct contracts with carriers. Eventually, Mr. Brinskele claims that MTC's business evolved to the point that it began purchasing long distance minutes from carriers (including Allnet, AT & T, Dialnet, LDDS, MCI,

---

1. As discussed *supra,* IRC § 6672 serves as a penalty for violation of IRC § 7501(a), which requires any person collecting or withholding any internal revenue tax to hold the amount of tax in a special fund in trust for the United States. The purpose of IRC § 6672(a) is to protect government revenue by allowing the government to impose a "penalty" as a collection device. An amount collected under IRC § 6672 is not a penalty *in addition* to the tax already owed; instead, IRC § 6672 creates a mechanism through which the government can obtain that tax from the business, or a responsible person, that collected the funds and was obligated to hold the funds in trust under IRC § 7501.

2. The government argues that summary judgment is not appropriate because there are disputed issues of material fact regarding whether MTC's bills were based on both time and distance, which must be resolved to determine whether MTC's services were subject to the federal excise tax under IRC § 4251. Because of the court's holding in this opinion that Mr. Brinskele is potentially liable under IRC § 6672 irrespective of the applicability of IRC § 4251 to MTC's long distance services, the court does not address this argument.

and Sprint) and passing through the carrier billings to the customer, so that MTC's customers paid their long distance bills to MTC and MTC remitted the same amount to carriers, less any volume discounts. In effect, MTC operated as a "switchless reseller" of long distance service, but did not consider itself a regulated carrier subject to federal excise tax until January 1995, when, after extensive litigation, the California Public Utilities Commission determined that MTC was subject to their regulatory authority. The government contends that MTC began operating as a switchless reseller in 1991 and at that time was subject to the federal excise tax. The government disputes the plaintiff's characterization of MTC's billing practices, arguing that MTC's billing records do not reflect passed through billing; instead, the government claims that MTC functioned as a reseller by marking up the discounted rate it received from long distance carriers to include its profit.

In addition to the rate MTC charged its customers, MTC's billing practice was to collect, as a separate line item labeled "federal tax," an amount which was equal to 3% of the long distance charges reflected on the bill. According to the plaintiff, the amount labeled "federal tax" was a charge by MTC which included both federal excise taxes and FCC charges. The government argues that the amount MTC collected from its customers as a "federal tax" was entirely the federal excise tax required by IRC § 4251.[3] During the time at issue, Mr. Brinskele maintains that many of the carriers from which MTC purchased long distance minutes charged MTC the 3% federal excise tax under IRC § 4251. The government does not dispute that MTC paid this tax to most of the carriers, though the government contends that MTC never paid the tax to Allnet, and paid no tax to Sprint after March 1994. The IRS has credited MTC for the amount of federal excise tax it paid to the carriers. However, the tax that MTC collected from its own customers was computed on a higher rate and was thus greater than the tax that MTC paid to the carriers, which was based on MTC's discounted rates. The amount in dispute in this case reflects the difference between the excise tax paid by MTC to the carriers, which was paid over to the IRS, and the "3% federal tax" MTC collected from its customers but did not pay to the IRS.

In 1997, the IRS began an audit of MTC because MTC had not filed excise tax returns during the period at issue. On December 29, 1999, the government assessed excise taxes against MTC in the amount of $959,244.26 for the following periods:

| Quarter Ended | Excise Tax |
| --- | --- |
| 03–31–92 | $ 39,385.11 |
| 06–30–92 | $ 44,739.18 |
| 09–30–92 | $ 44,739.18 |
| 12–31–92 | $ 44,739.18 |
| 03–31–93 | $ 69,447.25 |
| 06–30–93 | $ 70,321.27 |
| 09–30–93 | $ 66,531.01 |
| 12–31–93 | $105,675.53 |
| 03–31–94 | $123,676.82 |
| 06–30–94 | $125,938.88 |
| 09–30–94 | $224,050.85 |
| | $959,244.26 |

On December 21, 2001, the government, under IRC § 6672, assessed trust fund recovery penalties against Mr. Brinskele to recover the excise taxes which had been assessed against MTC. On January 17, 2002, Mr. Brinskele made a payment of $550.00 to the IRS towards the trust fund recovery penalty, and on the same day filed a Form 843, Claim for Refund and Request for Abatement. The IRS disallowed Mr. Brinskele's claim on April 16, 2002. Mr. Brinskele filed a complaint in this court on August 1, 2002 seeking recovery of the federal excise tax he had paid to the IRS in the amount of $550.00 and an abatement of all trust fund recovery penalties and interest assessed against him by the government. The government filed an answer and counterclaim on December 6, 2002, denying the plaintiff's allegations and seeking recovery of $957,160.40 in trust fund recovery penalties, interest,

---

**3.** The dispute regarding the amount of federal excise tax that MTC actually collected from its customers is not material to resolution of this motion. While the plaintiff argues that the "federal tax" included both FCC charges and federal excise taxes, the plaintiff concedes that the amounts MTC collected from its customers as a "federal tax" included, at least in some part, the federal excise tax under IRC § 4251.

fees and collection costs, along with interest thereon according to the law.

Mr. Brinskele filed a motion for summary judgment on January 10, 2005. Mr. Brinskele contends that the long distance services sold by MTC were not subject to the federal communications excise tax under IRC § 4251 because MTC's long distance charges were based only on the duration of the call and did not vary by distance, and its services did not fall into any of the other defined categories to which the tax applied. As such, Mr. Brinskele argues that he cannot be held secondarily liable for the excise tax under the trust fund recovery penalty provisions of IRC § 6672.

The government responds that MTC was liable for the federal communications excise tax under IRC § 4251, because MTC's charges were based on both time and distance.[4] Additionally, the government contends that whether MTC's services were subject to the federal excise tax under IRC § 4251 is irrelevant to Mr. Brinskele's liability. The government argues that, because MTC collected the federal excise tax from its customers, as a tax, under color of law, MTC was obligated to pay the taxes it collected over to the government under IRC § 7501. Because MTC failed to pay the taxes over to the government, the government contends that Mr. Brinskele is liable, as a responsible officer of MTC, under the trust fund recovery penalty provisions of IRC § 6672.

On May 25, 2006, after the briefs were filed on the plaintiff's motion for summary judgment, the Department of Treasury and the IRS issued Notice 2006–50. In Notice 2006–50, the government announced that the IRS no longer contends that the phrase "distance and elapsed transmission time" in § 4251 applies to long distance calls for which the charge is based only on the duration of the call. On May 25, 2006, the government provided a status report to the court to give notice that the government was con-

ceding, based on Notice 2006–50, that the federal excise tax under § 4251 does not apply to long distance service for which charges varied with time and not distance, but that the government's other arguments remained unaffected by the provisions of Notice 2006–50. The parties filed supplemental briefs to further address the legal significance of Notice 2006–50.

On October 6, 2006, oral argument was held on the plaintiff's motion for summary judgment, including arguments related to the supplemental briefs.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact; once this burden is met, in order to defeat summary judgment, the non-moving party must present evidence which demonstrates such a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must consider the evidence and resolve all doubts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d

---

4. In support of its argument regarding the applicability of IRC § 4251, the government submitted the declaration of Dr. Alan Pearce. Mr. Brinskele has moved to strike the declaration of Dr. Pearce on the grounds that Dr. Pearce does not qualify as an expert in the subjects he discusses. Mr. Brinskele has also moved to strike defendant's exhibit 14, the FCC tariff of U.S. West, on the grounds that it is irrelevant. Because, as discussed *infra,* the court does not reach the issues of MTC's rates and pricing addressed by the declaration and the tariff, the plaintiff's motion to strike is **DENIED** as moot.

538 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

## B. Mr. Brinskele is Potentially Liable under IRC § 6672

### 1. Applicability of IRC § 4251 Telecommunications Excise Tax

■ In his motion for summary judgment, Mr. Brinskele argues that MTC's customers did not owe federal excise tax under IRC § 4251, and thus that he may not be held liable under the trust fund penalty recovery provisions of IRC § 6672. The penalty provision, IRC § 6672(a), provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

This section serves as a penalty for violation of IRC § 7501(a), which provides that any person who is required to collect or withhold any internal revenue tax and pay over such tax to the United States must hold the amount of tax in a special fund in trust for the United States. Both parties agree that the purpose of § 6672(a) is to protect government revenue by allowing the government to impose a "penalty" as a collection device, so that if a tax that was required to be held in trust under § 7501 is not remitted to the government, the government has a mechanism through which to obtain that tax from the business or a responsible person. *See, e.g., Gephart v. United States,* 818 F.2d 469, 472 (6th Cir.1987); *United States v.*

*Huckabee Auto Co.,* 783 F.2d 1546 (11th Cir. 1986).

The federal excise tax at issue in this case is provided for in IRC § 4251, which imposes a 3% tax on amounts paid for communications services. IRC § 4251(b)(1) defines "communications services" as "local telephone service; toll telephone service; and teletypewriter exchange service." Under IRC § 4252(b)(1), "toll telephone service means a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication."[5] Under IRC § 4252(b)(2), "toll telephone service" means:

[A] service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

IRC § 4291 imposes a duty on the person providing communications services to collect the tax provided for by IRC § 4251 from its customers. This duty is described by Treas. Reg. § 49.4291–1, which states:

Except as otherwise provided in section 4263(a), every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under chapter 63 shall collect the amount of the tax from the person making that payment. Under section 7501, all taxes collected in this manner are held by the collecting agent in trust for the United States.

Mr. Brinskele contends that, because MTC's long distance charges did not vary

---

**5.** Initially, both Mr. Brinskele's brief and the government's brief focused substantially on the statutory construction of IRC § 4252(b)(1) and the appropriate interpretation of the phrase "distance and elapsed transmission time." However, in light of the government's concession in Notice 2006–50 issued by the Department of Treasury and the IRS on May 25, 2006 and the

government's corresponding supplemental brief, the interpretation of IRC § 4252(b)(1) is no longer at issue. As noted *supra,* in Notice 2006–50 the government announced that the IRS no longer contends that the phrase "distance and elapsed transmission time" in § 4251 applies to long distance calls for which the charge is based only on the duration of the call.

with both time and distance, its long distance services did not meet the definition of "toll telephone service" under IRC § 4252(b) and were not subject to the federal excise tax. Mr. Brinskele claims that MTC was never *required* to collect, account for, and pay over the communications tax under IRC §§ 4251 and 4252(b)(1) and (2) and therefore that the "tax imposed by" IRC § 6672(a) was zero. As such, Mr. Brinskele argues that MTC's long distance service customers never owed the excise tax to the government, and that he was never obligated to hold the excise tax in trust for the government under IRC § 7501.

In making this argument, Mr. Brinskele relies on two decisions which held that a IRC § 6672(a) penalty assessed against a responsible person should be abated by the government to the extent that the underlying tax obligation is paid. *See McCray v. United States,* 910 F.2d 1289 (5th Cir.1990); *Gens v. United States,* 222 Ct.Cl. 407, 615 F.2d 1335 (1980). *McCray* and *Gens* each involved claims by responsible persons who, along with other responsible persons, had been found jointly and severally liable under IRC § 6672(a) for unpaid employment taxes. The plaintiffs in *McCray* and *Gens* argued that their liability should be abated by the government to the extent that payments had already been made by other responsible persons. The courts held that the government could seek a judgment against each party for the full amount due, but that the penalties should be abated as the underlying tax obligations were actually paid. *McCray,* 910 F.2d at 1290; *Gens,* 615 F.2d at 1340.

Mr. Brinskele argues that if the government must abate the § 6672 penalty once a tax has been paid, it should similarly be required to abate the § 6672 penalty if a tax was never actually owed. Mr. Brinskele does not, however, dispute that *McCray* and *Gens* are distinguishable from the case at hand in that, in *McCray* and *Gens,* the tax was actually paid over to the government. *McCray,* 910 F.2d at 1290; *Gens,* 615 F.2d at 1339. Here, Mr. Brinskele seeks to abate the penalty although no tax has been paid to the government, even though the tax was collected by MTC.

Although the government contends that MTC's long distance services were in fact subject to the § 4251 excise tax, the government argues in the first instance that Mr. Brinskele is liable under § 6672 regardless of whether MTC's long distance services were subject to the excise tax under § 4251. The government argues that once a tax is collected, as a tax, under color of law, the amount collected must be paid over to the government, even if it is ultimately determined that the tax should not have been paid. The government asserts that if a federal excise tax is erroneously collected, it will be refunded to the customers, but that decision should be left to the IRS. The government contends that the persons responsible for collecting the tax must still pay it over to the government, and that the "collection agents" cannot keep the tax for themselves.

In support of this argument, the government relies on a series of cases in which a number of airlines erroneously charged their customers an excise tax on domestic airline tickets and the ticketholders sued the airlines directly for a refund. *See Brennan v. Southwest Airlines Co.,* 134 F.3d 1405 (9th Cir. 1998); *Sigmon v. Southwest Airlines Co.,* 110 F.3d 1200 (5th Cir.1997); *Kaucky v. Southwest Airlines Co.,* 109 F.3d 349 (7th Cir. 1997). In these decisions, the courts considered the relevance of IRC § 7422(a), which prohibits a suit or proceeding from being maintained in any court "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority" before a claim for a refund has been filed. Under IRC § 7422(f)(1), a suit or proceeding as referenced above may be maintained only against the United States. Each of the courts held that the appropriate remedy for the erroneously charged customers was for the customers to file a tax refund suit against the government, and that a suit against the "collection agent" who had collected the taxes on behalf of the government is prohibited. *See Brennan,* 134 F.3d at 1410; *Sigmon,* 110 F.3d at 1203; *Kaucky,* 109 F.3d at 353.

In *Brennan,* the court interpreted § 7422 to mean that "if someone wrongfully collects

money as a tax, then a suit to recover the sum constitutes a tax refund suit, even if the sum literally did not constitute an 'internal revenue tax.'" 134 F.3d at 1410. Thus, the court held that the plaintiff's only remedy to recover the erroneously collected tax was to file suit against the government. *Id.* at 1412. In *Sigmon,* the court found that the airline (Southwest) acted with colorable authority when it collected the tax, and that the "ex post knowledge [that the collection was erroneous] does not establish that Southwest lacked a colorable basis for collecting the tax. The issue is whether Southwest had a colorable basis to collect the tax *at the time.*" 110 F.3d at 1204 (emphasis added). According to the government, these decisions stand for the proposition that when an agent of the government acts under color of law to collect a tax, that agent has a duty to remit the tax to the government, and the appropriate remedy to recover an erroneously collected tax is a suit for a refund against the government.

In *Kaucky,* the court held that because "Southwest was exercising colorable authority to collect taxes, even though the collection turned out to be in error" the appropriate remedy was for the plaintiffs to file a refund suit against the government. 109 F.3d at 352. The court stated:

> When Congress makes a private firm the Internal Revenue Service's "collection agent" (we are not using "agent" in any technical sense), as it has done with airline tax and other excise taxes, *Dupont[Du-Pont] Glore Forgan Inc. v. American Tel. & Tel. Co.,* 428 F.Supp. 1297, 1306 (S.D.N.Y.1977), as well as with payroll taxes, the firm corresponds to an employee of the Service, and a suit for a refund of the taxes that the firm collected—a suit necessarily based on a claim that the taxes were collected in violation of law—is as much a suit for the refund of federal taxes as if it had been brought against the Commissioner of Internal Revenue ... It makes no difference whether the firm is still holding the money it erroneously collected or has passed it on to the IRS. The principal is bound by the agent's act. *The IRS has plenty of remedies against its collection*

*agents who fail to remit taxes that they collect.* See 26 U.S.C. § 6672(a).

*Id.* (emphasis added).

Based on these precedents, the government contends that at the time MTC collected the excise tax from its customers (1992–1994), MTC was acting with colorable authority pursuant to IRC § 4291, which required every person receiving a payment for communications services to also collect the excise tax related to those services. At that time, the common practice of long distance service providers was to collect the federal excise tax from all of their clients. The applicability of the § 4251 tax to specific long distance services was not challenged until 2004, when a number of courts determined that the tax did not apply to long distance charges based solely on duration of time. *See, e.g., Office-Max, Inc. v. United States,* 428 F.3d 583 (6th Cir.2005); *American Bankers Ins. Group v. United States,* 408 F.3d 1328 (11th Cir.2005); *America Online Inc. v. United States,* 64 Fed.Cl. 571 (2005). The government argues that, because MTC was acting under color of law at the time that it actually collected the excise tax, the tax's applicability to MTC's long distance services and its legality are not relevant to Mr. Brinskele's liability.

Furthermore, the government argues, contrary to Mr. Brinskele's contention, that the requirements of Notice 2006–50 support the government's position. Mr. Brinskele contends that the Notice proves that the tax should not have been collected in the first instance. In particular, Mr. Brinskele claims that § 4(c) of Notice 2006–50 created an exception to IRC § 7422 through a unique procedure by which, after a short transition period, any disputes over the IRC § 4251 excise tax's applicability to time-only long distance service are handled between the customer and the collector. As such, Mr. Brinskele contends that, if the government allows a departure from the requirements under IRC § 7422 to allow for the refund of erroneously collected taxes, a similar departure should be allowed in the situation at hand. The government asserts that the Notice in fact demonstrates that even when a tax is no longer owed the IRS, private "collection agents" are not freed of their obli-

gations. Instead, § 4(c) of the Notice instructed the "collection agents" to continue collecting and remitting the tax until the billing cycle was complete and allowed telephone companies to continue to collect the IRC § 4251 excise tax on long distance services for which charges were only based on the duration of the call through July 31, 2006, even though the tax was not owed. In other words, those companies collecting the tax through July 31, 2006 were, under § 4(c) of Notice 2006–50, required to either pay the taxes collected over to the government or to repay the taxes to taxpayers. Accordingly, the government maintains that the Notice does not impact Mr. Brinskele's potential liability under § 6672.

After careful consideration, the court agrees with the government that Mr. Brinskele remains potentially liable under IRC § 6672 irrespective of the applicability of IRC § 4251 to MTC's long distance services, and that Notice 2006–50 does not diminish Mr. Brinskele's potential liability. MTC collected the federal excise tax from its customers under the "color of law" pursuant to IRC § 4251. As noted *supra*, footnote 3, because Mr. Brinskele concedes that at least a portion of the 3% "federal tax" MTC collected from its customers included some of the excise tax under IRC § 4251, MTC was acting as a "collection agent" under IRC § 7501. As such, MTC was obligated to hold the tax in trust for the United States under IRC § 7501. To interpret IRC § 6672 in a manner which would relieve MTC, and any responsible persons, of the obligation to remit to the government amounts erroneously collected as taxes, as Mr. Brinskele proposes here, is fraught with problems. "Collection agents" are never authorized to collect and keep taxes for themselves. To the extent that MTC or its customers had concerns regarding the applicability of the excise tax, MTC's customers were responsible for questioning the tax's legitimacy in a claim for a

refund to the IRS. MTC, and Mr. Brinskele (if he is found liable as a responsible person), were legally obligated to pay the tax to the government once it was collected. At that point, the legitimacy of the tax was not their concern.[6] While the court recognizes, and the government does not dispute, that Notice 2006–50 has created a unique procedure for handling credits and refunds of taxes incorrectly charged under IRC § 4251, this procedure does not allow the collectors to keep the already collected taxes for themselves. Therefore, Mr. Brinskele is potentially liable as a responsible person under IRC § 6672 irrespective of whether MTC's long distance services were actually subject to the federal excise tax under IRC § 4251.

## 2. Government's Exposure to Refund Claims

▮ Additionally, Mr. Brinskele claims that because the statute of limitations on claiming a refund has run for MTC's customers, the government has no exposure to potential refund claims and thus needs no protection from § 6672(a). Mr. Brinskele contends that whether the taxpayer has an exclusive claim against the government is irrelevant here because no potential claims exist against the government due to the statute of limitations. He argues that requiring him to pay the penalty would result in the government's unjust enrichment because the government is not entitled to the money it seeks. Therefore, Mr. Brinskele contends that § 6672 does not apply to him.

Mr. Brinskele relies on *In re Air Transportation Excise Tax Litigation*, 37 F.Supp.2d 1133 (D.Minn.1999), which involved a suit by shippers who had erroneously been charged an excise tax by FedEx. The plaintiffs claimed that the FedEx contract represented that its rates included an excise tax during periods when a federal excise tax was not in effect, and sued for

---

**6.** Mr. Brinskele suggests that this case poses unique circumstances, because the government collected a tax for many years that was later determined to not be owed, and the statutory language in § 6672 considers a tax that was lawfully imposed. The court, however, agrees with the government that, while the facts of this case are unique, the test for determining liability

is to consider the circumstances at the time the tax was collected, and here, the tax was not challenged by MTC, or other providers, until well after it was collected by MTC. Moreover, to hold otherwise would potentially encourage "collection agents," instead of the government, to make decisions regarding the legitimacy of the taxes they are collecting.

breach of contract, unjust enrichment, and conversion. FedEx argued that the suit should be preempted and should instead have been brought against the government as a tax refund suit under § 7422, although FedEx admitted that it had never remitted the taxes it collected to the IRS. The court held that it would be futile for the plaintiffs to seek a refund from the IRS for two reasons: (1) the IRS never received money from the carrier and thus had no money to refund the plaintiffs; and (2) the carrier's bills did not separately identify the excise tax, and determining the exact amount the plaintiffs had actually paid in taxes would be impossible. The court concluded:

> [S]ection 7422 is limited in its application to instances in which a taxpayer—one subject to an internal revenue tax—seeks to recover a purported and paid "tax" that was actually "assessed" or "collected" on behalf of the government *and that was actually paid to the government* ... The statute does not preclude actions where, as here, a person who was not subject to an internal revenue tax seeks to recover an amount alleged to have been collected by someone else ... where the collector never remitted that amount to the government.

*Id.* at 1137 (emphasis in the original).

Mr. Brinskele argues that *In re Air Transportation Excise Tax* is similar to the case at hand because MTC never paid the taxes it collected over to the government, and that the excise taxes were collected improperly and are not owed to the government. As such, Mr. Brinskele contends that the government has no exposure to potential refund claims from MTC's customers and that requiring him to pay the IRC § 6672 penalty would unjustly enrich the government. The court in *In re Air Transportation Excise Tax* distinguished the tax collected by FedEx from other, similar suits for the refund of erroneously collected excise taxes because FedEx's bills did not include specific and separate excise tax charges, and found that it would be futile to attempt to determine the appropriate amount to be refunded to each customer. *Id.* The court declined "to read section 7422 as requiring a person to go to the IRS to recover an incalculable 'tax'

that was never due, assessed, or paid." *Id.* at 1138.

In response, the government argues that the present case is distinguishable from *In re Air Transportation Excise Tax* because in this case MTC's bills very clearly identified the amount of tax it collected from each client and made clear the intention to actually collect a tax. Furthermore, at the time MTC collected the excise tax from its customers, the tax was widely considered to be an appropriate tax and was assessed, under color of law, to MTC's customers. The government contends that the limitations on § 7422 imposed by *In re Air Transportation Excise Tax* are not applicable to this case.

The government further argues that the likelihood of MTC clients seeking a refund from the IRS is irrelevant to Mr. Brinskele's potential liability under § 6672, because § 6672 liability depends on the facts present at the time the tax was collected. The government focuses on the purpose of § 6672 and references the Tenth Circuit's interpretation of § 6672 liability in *Goldston v. United States,* 104 F.3d 1198 (10th Cir.1997). In *Goldston,* the court held that § 6672 was enacted "to impose personal liability on individuals collecting the taxes by deeming the collector/withholder a 'responsible person.' ... The liability for the payment of taxes collected arises upon the collection of those taxes." *Id.* at 1200. Under this reasoning, the government argues that Brinskele's potential liability is personal, and that it arose at the time MTC collected amounts under the "federal tax" line item as identified on its bills but failed to pay the tax over to the United States. At that time, the government contends, the funds were property of the United States and Mr. Brinskele had a duty to hold the funds in trust for the government.

The court agrees with the government that Mr. Brinskele's reliance on *In re Air Transportation Excise Tax* is misplaced, and that the possibility, or lack thereof, of exposure to suits for tax refunds by MTC's customers is irrelevant to Mr. Brinskele's potential liability under IRC § 6672. MTC acted as a collection agent of the government when it collected an amount labeled "federal tax" on

its bills, under color of law, from its customers during the period at issue. MTC had a duty to hold those taxes in trust for the United States and to remit them to the government under IRC § 7501. MTC failed to remit the taxes it collected to the government. In such circumstances, to the extent that Mr. Brinskele is found to be a "responsible person," IRC § 6672 is an appropriate mechanism through which the government can seek to recover those funds.

## CONCLUSION

For all of the foregoing reasons, the plaintiff's motion for summary judgment is **DE-NIED.** The court will contact the parties to set a schedule for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**