# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 8, 2022

Lyle W. Cayce
Clerk

No. 21-10131

JETPAY CORPORATION,

*Plaintiff—Appellant*,

*versus*

UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-3376

Before CLEMENT, SOUTHWICK, and WILLETT, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

A credit card processing company sought a refund from the Internal Revenue Service for federal excise taxes initially paid by airline customers but later reimbursed to those customers by the company. The district court held that the company was not a proper party to seek a refund. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

JetPay Corporation is a national company offering credit card processing services to merchants and banks. Among its clients was an airline charter, Southern Sky Air Tours, which we will refer to by its business name

of Direct Air.  JetPay processed credit card payments for customers purchasing tickets from Direct Air, placing the funds in Direct Air's escrow account until the passengers took the flights.  Included in the ticket price was an excise tax in the amount of 7.5%, which the airline was required to remit to the federal government.  When customers cancelled flights and sought refunds, JetPay was contractually obligated to refund the customer the entire amount paid if Direct Air could not.

In 2012, Direct Air ended its operations and filed for bankruptcy. Because Direct Air's various accounts were depleted, JetPay asserts that it was contractually obligated to use its own funds to reimburse thwarted passengers, including $2,691,080 in excise taxes.  The parties dispute whether Direct Air had already remitted the taxes to the government prior to the bankruptcy.  Regardless, JetPay timely filed with the Internal Revenue Service for a refund of the excise taxes it repaid to the consumers.  The IRS denied the claim, and JetPay appealed the decision.  After failed negotiations, JetPay brought this suit under Section 6415 of the Internal Revenue Code. The IRS moved for summary judgment and asserted that (1) sovereign immunity barred the suit because JetPay lacked standing to sue under relevant tax refund statutes and (2) the refund was claimed too late.  The district court agreed with the IRS that JetPay lacked standing under the relevant statutes and therefore sovereign immunity barred the suit.  JetPay timely appealed the district court's adverse summary judgment decision.

## DISCUSSION

This court gives *de novo* review to a grant of summary judgment and to interpretations of the Internal Revenue Code.  *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 971 (5th Cir. 2021) (summary judgment); *Schaeffler v. United States*, 889 F.3d 238, 242 (5th Cir. 2018) (statutory interpretation). Summary judgment should be granted if "the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

On this appeal, we must interpret numerous provisions of the Internal Revenue Code. If the language of a statute is clear, "we must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). We do not, though, focus narrowly on single statutory phrases: a "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (citation omitted). We seek to interpret a statutory provision as part of "a symmetrical and coherent regulatory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citation omitted). "The most grammatical reading of a sentence in a vacuum does not always produce the best reading in context." *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2448 (2021).

We are mindful of another requirement. Because a suit for a tax refund is a suit against the Government, the United States must waive its sovereign immunity to be amenable to the suit. *See PALA, Inc. Emps. Profit Sharing Plan & Tr. Agreement v. United States*, 234 F.3d 873, 876 (5th Cir. 2000) (noting Congress's waiver of sovereign immunity for certain tax refund suits). Waivers of sovereign immunity are governed by the "traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign and not enlarge[d] . . . beyond what the language requires." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (alteration in original) (citations omitted). In the context of tax refund statutes, "any waiver of the National Government's sovereign immunity must be unequivocal." *Wagner v. United States*, 545 F.3d 298, 301 (5th Cir. 2008) (quoting *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992)).

No. 21-10131

I.    *Statutory requirements for a refund lawsuit under Section 6415*

Section 6415 provides for a "refund of any overpayment of tax imposed by section 4251, 4261, or 4271" provided that "the person who collected the tax and paid it to the Secretary" demonstrates that such a person "has repaid the amount of such tax to the person from whom he collected it, or obtains the consent of such person to the allowance of such credit or refund." 26 U.S.C. § 6415(a). The tax at issue in this case is the federal excise tax imposed under Section 4261. It is levied on airplane passengers travelling within the United States in the amount of 7.5% of the total ticket cost. *See* 26 U.S.C. § 4261.

JetPay argues that it meets the requirements for a tax refund under Section 6415 because it both (1) "collected" the taxes from customers purchasing tickets with a credit card and (2) "paid" the taxes to the IRS when it transmitted the taxes to Direct Air. Under JetPay's theory, Direct Air was an agent of the IRS for collecting taxes. Because we conclude that JetPay did not pay the tax to the Secretary, we do not consider whether the company qualifies as "the person who collected the tax." 26 U.S.C. 6415(a).

JetPay argues that it paid the tax at issue "to the Secretary" when it transferred the tax to Direct Air, who JetPay contends is an agent of the IRS. *Id.* One of the authorities on which it relies for the concept of an agency had considered whether a class of plaintiffs could sue Southwest Airlines for collecting (and allegedly remitting to the IRS) a ten-percent excise tax that ultimately was not applicable when the legislation received a Presidential veto. *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349, 350–51 (7th Cir. 1997). In holding that Southwest, a private party, could not be sued for a tax refund, the court described Southwest as the IRS's "collection agent," though not "in any technical sense." *Id.* at 351. Still, the court expanded the analogy and held that it made "no difference whether the firm is still holding the

money it erroneously collected or has passed it on to the IRS" because the IRS was "bound by the agent's act" and had "plenty of remedies against its collection agents." *Id.* at 352. Because the suit was in essence a suit for a tax refund, the proper party was the United States, not its agent. *Id* at 353. We later adopted *Kaucky*'s reasoning on similar facts, holding that "Southwest acts as the government's agent in collecting airline ticket excise taxes." *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1203 (5th Cir. 1997).

These opinions do not stand for the proposition that collectors of federal excise taxes are agents of the IRS "in any technical sense." *Kaucky*, 109 F.3d at 351. JetPay, unlike the plaintiffs in those cases, is not seeking a refund for taxes the company itself paid so much as it is seeking to hold the IRS responsible for Direct Air's failure to hold up its end of the bargain. JetPay is neither a customer required to pay the tax before taking a flight nor an airline required to collect it. We decline to allow this creative expansion of a tightly drawn tax refund statute.

## II.     *Standing under the economic burden test*

In the alternative, JetPay argues that it may seek a refund because it bore the economic burden of the taxes, which it contends forms a separate, non-statutory basis for suit. It argues that the district court misapprehended the law and did not properly consider JetPay's evidence.

The economic burden test is a "Court-made amelioration" that allows a party that does not satisfy "the express requirements of 26 U.S.C. § 6415(a)" to pursue the tax refund because it bore the economic burden of the tax by paying it out-of-pocket to the IRS. *McGowan v. United States*, 296 F.2d 252, 253 (5th Cir. 1961). Whether a litigant has borne the economic burden is a question of fact. *See United States v. Walker*, 234 F.2d 910, 911 (5th Cir. 1956).

No. 21-10131

We conclude that the economic burden test does not allow a boundless search for abstract cost-carrying of a tax by a litigant. Instead, we have applied the test under a specific set of circumstances: when an entity is contesting the applicability of the statute to its services but, out of an abundance of caution, chooses to pay the IRS itself rather than attempt to collect the tax from its customers. *See, e.g.*, *id.*; *see also McGowan*, 296 F.2d at 253. Because the would-be "collector" has not in fact "collected" the tax from someone using its services but rather paid the taxes itself, it does not expressly satisfy Section 6415's language. Because it has borne the economic burden, though, we have held that these parties still may pursue a refund.

The circumstances of these cases applying the economic burden test differ materially from the facts of this case. JetPay actually collected the taxes from the customers and certainly did not pay the IRS preemptively before litigating the applicability of some tax. Moreover, none of the cases deal with a contractually imposed obligation to refund customers like JetPay assumed here. Every case instead concerns an entity arguably obligated under the statute to collect and pay the tax; none feature a self-imposed obligation like JetPay has assumed here. The narrow exception recognized in these cases is inapplicable to JetPay.

## III.    *Equitable subrogation to the taxpayer's rights*

JetPay's final theory is that it is equitably subrogated to the rights of the taxpayers to whom JetPay refunded the ticket costs. Effectively, JetPay says that by refunding Direct Air's taxpaying customers their excise taxes, it has stepped into their shoes and is thus able to assert their rights to a tax refund under 28 U.S.C. § 1346.

Section 1346 sets out a basic sovereign immunity waiver in tax refund suits. *See* § 1346(a)(1). The statute grants the district courts original jurisdiction over civil actions against the United States "for the recovery of

6

any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."[1] *Id.* Though this waiver is unquestionably broad, the Supreme Court and this court have used Section 1346 to permit tax refund suits by third parties in only a few cases. *E.g.*, *United States v. Williams*, 514 U.S. 527, 540 (1995) The Supreme Court specifically declined to address "the circumstances, *if any*, under which a party who volunteers to pay a tax assessed against someone else may seek a refund under § 1346(a)." *Id.* (emphasis added).

In *Williams*, the Court allowed a woman to challenge a lien on her property even though it resulted from an assessment only against her ex-husband, making her a third party. *See id.* at 529. Subsequent cases, however, have recognized that *Williams* was confined to its facts. *See Wagner v. United States*, 545 F.3d 298, 303 (5th Cir. 2008). Further, we have held that after "*Williams*, Congress enacted § 7426(a)(4), and recent cases have noted that § 7426 is now the only avenue for third party actions." *Id.*

The Third Circuit has examined the propriety of third-party tax suits under Section 1346(a). *See Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 145–46 (3d Cir. 2008). In that case, a trust fund *and* its administrator both sought return of funds paid to the IRS. *Id.* at 141. Among other things, the IRS contended that the administrator, who had voluntarily reimbursed the fund, lacked standing to sue under Section 1346(a) because the penalty had not been assessed against him personally. *Id.*

---

[1] Section 6402 enables the Secretary to credit an erroneous overpayment to the payor and refund any balance. 26 U.S.C. § 6402(a).

The Third Circuit agreed with the IRS and held that Section 1346 only conferred a cause of action on the taxpayer, not on the third-party administrator. *Id.* at 144. That court noted that the Supreme Court's decision in *Williams* largely turned on the fact that the litigant was attempting to remove someone else's lien from *her* property, paid under protest, and had no other remedy. *Id.* This case was different, according to the Third Circuit, because the administrator was not assessed the penalty, his property was not encumbered by the government, and, notably, the administrator did not pay the IRS the tax. *Id.* "Rather, the Fund paid the IRS, and [the administrator] merely decided to reimburse the Fund." *Id.* Though the administrator contended that its payment to the Fund was involuntary, the court held that this argument missed the mark. *Id.* at 144–45. *Williams*, the court reasoned, was concerned about involuntary payments to *the government*, not to the Fund. *Id.* The administrator therefore lacked statutory standing under Section 1346. *Id.* at 145.

We find the Third Circuit's reasoning persuasive. JetPay's claims fail for similar reasons. Like the administrator, JetPay was not assessed the tax; airline customers were. Importantly, JetPay did not pay the IRS but rather "merely decided to reimburse" the customers who purchased airline tickets. *See id.* at 144. The fact that JetPay was contractually required to do so is irrelevant. JetPay assumed the obligation to cover Direct Air's chargebacks without having any statutory obligation to do so.

JetPay attempts to surmount its third-party troubles by likening its position to someone entitled to equitable subrogation under state law. Equitable subrogation enables a party that lacks standing to "step into the shoes" of another and sue in their stead. *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). It is typically invoked when one party, "not acting voluntarily," pays the debt of

another. *Id.* JetPay asserts that it paid the taxes involuntarily and thus can sue in the taxpayers' stead.

The lone opinion cited by JetPay to support such analysis is from a district court that, when considering whether the case could proceed under Section 1346, denied the government's motion to dismiss because of common-law subrogation. *Industrial Valley Title Ins. Co. v. United States*, No. 3:92-0814-1J, 1993 WL 108038, at *2 (D.S.C. Jan. 4, 1993). Later, though, the court granted summary judgment to the government, concluding that Section 1346 was unavailable because the party seeking a refund under that statute must be the one who was assessed, not a subrogee. *Industrial Valley Title Ins. Co. v. United States*, No. 3:92-0814-1AJ, 1994 WL 520054, at *4 (D.S.C. May 6, 1994). These opinions do not assist JetPay.

Even were we to entertain this theory, we are not convinced that JetPay's payment is "involuntary" in the sense contemplated by *Williams*, which focused on whether the Plaintiff's payment to *the government*, not a third party, was voluntary. *See Philadelphia Marine*, 523 F.3d at 144–45 (citing *Williams*, 514 U.S. at 531). We are bound by the Supreme Court's decisions requiring a narrow construction of Congress's waiver of sovereign immunity in Section 1346 and see no reason to depart from that principle here.

AFFIRMED.